## MEADS, coroner, *v.* DOUGHERTY COUNTY.

1. There is no law in this State which either requires or authorizes a coroner to hold an inquest over " a lot of bones bleached by time," constituting parts of a human skeleton casually found upon the bank of a creek, it being obviously impossible to ascertain who the deceased was, how long since death had ensued, or in what manner it was caused. Such bones do not constitute

"a dead body " within the meaning of the act of December 18, 1893, relating to coroners' inquests.

2. The interment of such bones in a " soap box, without expense to anyone," does not entitle a coroner to the fee of fifteen dollars prescribed in section 3701 of the code " for furnishing coffin and burial expenses."

July 13, 1896.  By two Justices.

*Certiorari.* Before Judge Bower. Dougherty superior court. October term, 1895.

The coroner of Dougherty county brought suit against said county on an account. He obtained a verdict for $15, which was set aside on *certiorari,* the court holding that the coroner was not entitled to recover in this case. The facts as agreed on are as follows: "On or about September 10, 1894, a lot of bones, bleached by time, supposed to be, and were no doubt, those of a human being, were found on the banks of the creek just below Albany in said county. Said coroner, having in some way heard of said bones, had a jury of inquest summoned to investigate the same. It was agreed that from a casual observation of said bones it was impossible for any one to have found out who said deceased was, or how he or she came to his or her death. Under the instructions of said coroner, said jury investigated and examined said bones, but failed to find out whom the person was and the cause of the death. The jury and coroner then put all the bones they could find, not being able to find all, that belonged to said unknown person, into a soap box, without expense to any one, and buried the same at or near the place where they were found: Said coroner then presented his bill to said county, to wit, $10 for holding inquest on unknown party, and for burying the same $15, making a total of $25. The county commissioners refused to pay account as presented, but did pay $10, the first item of the same."

*Wooten & Wooten,* for plaintiff.
*D. H. Pope,* for defendant.

LUMPKIN, Justice.

We have excellent reason for believing that some of the coroners of this State are over-zealous in the matter of holding inquests. From the records of this court, and from knowledge coming to us in the way of general information, we are satisfied that many inquests are held for which there is no real or legal necessity.

The act of 1893 (Acts of 1893, p. 116), superseding section 589 of the code, provides that inquests shall be held: "1st. Of all violent, sudden or casual deaths, when there are no eye-witnesses to the killing or cause of the death. 2d. Of all sudden deaths in prison without attending physician. 3d. Of all dead bodies found, whether of persons known or unknown, when it is apparent from the body that violence caused the death, or when the person died or disappeared under suspicious circumstances. 4th. Whenever ordered by a court having criminal jurisdiction."

Does "a lot of bones bleached by time," constituting parts of a human skeleton found upon the bank of a creek, and which presumably had been unearthed or washed up by its waters, warrant the holding of an inquest under any of the provisions of the law above quoted? Obviously not. How could the coroner have had the slightest reason for supposing that the person of whom these bones once formed a part came to a "violent, sudden or casual" death, at which no witness was present? Surely there was no reason for believing that the existence of this particular person was ended in prison; or, even if such were the case, that death ensued without the intervention of an attending physician. And certain it is that no court having criminal jurisdiction ordered this particular inquest to be had. We presume that the coroner acted under the third of the above specified provisions. Its language, however, did not warrant him in holding the inquest. It cannot be doubted that the person over a portion of whose remains the solemn ceremonial was conducted was "un-

known"; but we do not think those few bleached remnants of a human being fall under the descriptive words "dead bodies," as used in the statute. Supposing, however, they were a "body," how was it "apparent from the body that violence caused the death," or what was there to suggest that this "person died or disappeared under suspicious circumstances?" Seriously, such an investigation could result in no possible good, and was never contemplated by law. Again, after the "inquest" was over, the coroner interred the bones in a "soap box, without expense to anyone." Surely, this was not "furnishing coffin," and did not entitle the coroner to the fee of fifteen dollars prescribed by law for expenses incurred in burying the body of a human being.

It appears from the record that the coroner was allowed his fee for holding the "inquest," but denied his charge for the alleged burial expenses. The only question before us relates to this latter charge. We are quite certain he was not entitled to collect it; and, if necessary, would have no difficulty in deciding that he ought not to have received the fee for holding the inquest.        *Judgment affirmed.*