THE STATE v. BAKER, *Appellant.*

Division Two, May 31, 1898.

1. **Grave Robbing**: FAILURE OF EVIDENCE. The evidence of this case is reviewed and is held wholly insufficient to sustain an indictment under the statute making it an offense to rob a grave of a dead body for purposes of selling the same or for dissection or for anatomical experiment.

2. ———: RECENT POSSESSION. The value of the recent possession of the fruits of a crime as evidence depends on its being recent and exclusive. In this case a sack or waist with the peculiar buttons on it like those on the one in which deceased was buried, whose body was missing from the grave, and who had been dead a year at the time, was found in the brickyard of defendant, which was accessible to all persons alike, and several witnesses said the waist looked like the one in which deceased was interred. *Held*, that the evidence was neither recent nor exclusive.

3. **Witness:** SPITE: REBUKE. A witness who claimed he saw some one rob a grave, and that the next day defendant confessed to him that he had a "stiff" buried in his brick yard, and who kept quiet for a year about it, and only divulged the matter when the defendant put in a claim against an estate in which the witness has an interest, deserved the rebuke of the court. But notwithstanding that, the sentence will be allowed to stand if sustained by the evidence.

4. **Statutory Requirements:** EVIDENCE. Where a person is indicted for violation of specific statutory provisions, the evidence must establish one of the acts denounced therein as criminal.

*Appeal from Putnam Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED AND PRISONER DISCHARGED.

*Marshall & Franklin Brothers* for appellant.

(1) The evidence in this case is wholly insufficient to sustain a conviction under the indictment or any of the counts thereof. *State v. Fox*, 136 Mo. 139, and cases cited. (2) The purpose for which the body of deceased Mary J. Williamson, was disinterred must be shown as clearly as any other material fact proven in evidence and this the State wholly fails to do. (3) The general verdict of the jury in this case without specifying on which of the three counts they base their finding is too indefinite to base a judgment, and the court should have set it aside, if there were no other errors appearing in the whole record. *State v. Pierce*, 136 Mo. 34; *State v. Hecox*, 83 Mo. 531; *State v. Hudson*, 137 Mo. 618; *State v. Hutchison*, 111 Mo. 257; *State v. Karlowski*, 142 Mo. 463.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Evidence that a body is disinterred secretly during the night time and concealed tends to show

that the disinterment was for an unlawful purpose. *State v. Pugsley*, 75 Iowa, 742; 2 McClain's Crim. Law, sec. 1167. (2) Proof of any number of facts and circumstances consistent with the truth of the statements which have led to the discovery, and which would not probably have existed had the crime not been committed, necessarily corroborates statements or confessions of defendant, and increases the probability of their truth. 17 Ill. 426; Wills on Cir. Ev., p. 118. (3) Very slight corroborating circumstances have been held sufficient to sustain a conviction where a confession or admission of the crime has been made. *State v. Robinson*, 12 Mo. 592; *State v. German*, 54 Mo. 526; *State v. Patterson*, 73 Mo. 695; Wills on Cir. Ev., p. 117. (4) The evidence may not be sufficient to produce in the minds of the jury an absolute certainty of defendant's guilt, nor to prove that he had any motive to commit the crime charged, and yet be strong enough to satisfy the jury, beyond a reasonable doubt, that he was guilty. 45 Ala. 66; Wills on Cir. Ev., p. 307. (5) Intention, deliberation and premeditation are operations of the mind, and their existence must be determined from the facts and circumstances of the case. The inference of intention is a fact only for the jury. 44 Tex. 473; 35 Hun. 295; Wills on Cir. Ev., p. 52. (6) Direct proof of intention is not required nor can it be obtained. Intention may be inferred from what the party does and says, and from all the circumstances and acts accompanying the crime. *People v. Walwroth*, 4 N. Y. Cr. R. 355; Wills on Cir. Ev., p. 53; *Culbertson v. Hill*, 87 Mo. 553; 79 Mo. 509. (7) When an act is of such a nature as not necessarily to imply guilty intention, and such intention is the specific point in issue, then the evidence of declarations by the party or of collateral statements made are of the highest importance as evidence of his motives and

purposes.   Wells on Cir. Ev., pp. 53 and 54; *State v. Grant*, 79 Mo. 113.   (8)   Identification is often satisfactorily inferred by the correspondence of fragments of garments either found in the possession of the party charged with the crime or discovered at or near the scene of the crime or otherwise related to the *corpus delicti*.   Wills on Cir. Ev., p. 186.   (9)   The rule is that a general finding of guilty on an indictment containing several counts relating to the same offense is sufficient without specifying the count on which the verdict is based.   *State v. Brooks*, 92 Mo. 542; *State v. Pitts*, 58 Mo. 558; *State v. Nicholson*, 56 Mo. App. 412; *State v. McDonald*, 85 Mo. 539.   (10)   Verdict will not be disturbed when inference of guilt can be reasonably drawn from the evidence, and in such cases the Supreme Court will not interfere with a verdict on the ground of the insufficiency of the evidence to support it.   *State v. Banks*, 118 Mo. 117; *State v. Jackson*, 106 Mo. 174; *State v. Fisher*, 124 Mo. 460; *State v. Perry*, 136 Mo. 126.

GANTT, J.—This is a prosecution originating in Putnam county, Missouri.   The indictment, omitting formal parts, contained three counts as follows:

*First count.*   "That one Ira Baker, on the —— day of April, A. D., 1895, at the said county of Putnam, State of Missouri, did then and there unlawfully, willfully and feloniously dig up, disinter and remove the dead body and the remains of a human being, to wit, the dead body and remains of one Mary J. Williamson, deceased, from the grave in which the said body and remains had then before been interred and then and there was, for the purpose of selling the dead body and remains, against the peace and dignity of the State."

*Second count.*   "That one Ira Baker, on the —— day of April, 1895, at the county of Putnam, State

of Missouri, did then and there willfully and feloniously
dig up, disinter and remove the dead body and remains
of one Mary J. Williamson deceased, from the grave
in which the said body and remains had then before
been interred and then and there was, for the purpose
of dissecting the said body and remains, against, etc.''

*Third count.* ''That one Ira Baker, on the ——
day of April, 1895, at the county of Putnam, State of
Missouri, did then there willfully, unlawfully and
feloniously dig up, disinter and remove the dead body
and remains of one Mary J. Williamson, deceased,
from the grave in which the said body and remains
had then before been interred and then and there was,
for the purpose of surgical and anatomical experiment
and preparation of the said body and remains, against,
etc.''

At the September term of said court, 1897, the
defendant was put on trial and the jury brought in a
general verdict, finding the defendant guilty and
assessing his punishment at a term of two years in the
penitentiary. Defendant assigns three grounds of error
for reversal.

I. The first and the substantial assignment is that
the sentence should be reversed because there was a
total failure of proof to show a violation of the crim-
inal law under either of the counts in the indictment.
The burden of the evidence was that defendant lived
at Lemon Station, in Putnam county, and was operat-
ing a brickyard some distance from his house; that
one Dr. Chapman also lived in the same village; that
he and defendant were quite good friends; that Chap-
man was much addicted to intoxication and defendant
often took him to his home and that on one occasion
the doctor had injured defendant by striking him in
the side. Kennedy, the witness upon whom the State
relies to sustain this conviction, was a half-brother of

Dr. Chapman. Defendant had a claim against the estate of Chapman and this aroused the resentment of Kennedy and he preferred this charge. His story is this, that one night a few days prior to the day he named for the commission of the offense he visited Chapman and they slept in the same room that night. From that room the cemetery and defendant's brickyard were visible. About midnight an electrical storm occurred and by the flashes of lightning a form of *some one* was revealed to Dr. Chapman, who called Kennedy's attention to it. Chapman died before the trial of this case. The morning after the storm Kennedy says he met defendant and saw clay on his shoulder and remarked to him he must have been out riding the night before. This was in April, 1895. He says defendant then took him aside, and said he was out and got a "stiff" and had buried it in his brickyard. During the same day Kennedy asked defendant when he was going to put up a monument up there, pointing to the brickyard, and defendant answered, "Never you mind; when I want a little ready money, I can get $20 to $40 for *him* in Keokuk or St. Louis." There was evidence that the grave of a Mrs. Williamson had been robbed of its body and evidence that a sack or waist with the peculiar buttons which she wore was found in the brickyard of defendant and Kennedy says *his impression* was that defendant said it was an old lady he buried in his brickyard.

Kennedy says he reported to Chapman what defendant said, and Chapman requested him to say nothing about it, as people would say Chapman was concerned in the disinterment; that he never mentioned it until after Chapman's death and the preferment of defendant's claim against Chapman's estate. The evidence tended to show that defendant was a man of good character and an industrious man. He testified and

denied the story of Kennedy.   He was corroborated by other witnesses in several particulars.   It will be observed that Kennedy did not recognize the person who was working in the cemetery on the night of the electrical storm; that defendant never told Kennedy that he had dug up Mrs. Williamson's body and never said he could obtain $20 to $40 for *her* body, but said he could get that sum for *him*.   At best this was a most indefinite extra-judicial confession, and of course alone could not sustain a conviction.   No one testified to seeing defendant in the cemetery, or to finding the body of Mrs. Williamson in defendant's brickyard. No one saw her corpse at any time in his possession. There is not a scintilla of evidence that he ever offered to sell her body to any one.   It follows that the only evidence upon which the verdict can rest is the finding of a bundle of old clothes in his brickyard over a year after the supposed re-interment of Mrs. Williamson's body therein.   Now it was not shown that defendant's brickyard was in his own exclusive possession, but on the contrary was as accessible to others as defendant. Moreover the old dressing sack had been buried for more than a year and was greatly decayed and the witnesses could only say it looked like hers, and the buttons were of the same pattern, but granting that it was her sack *a whole year* had elapsed before the conscience of this prosecuting witness was pricked to prefer this charge and during that time countless opportunities had been afforded others as well as defendant to bury those clothes in the open brickyard at night. The value of recent possession of the fruits of crime as evidence depends upon its being recent and exclusive, and in this case there was neither.   *State v. Castor*, 93 Mo. 242; 3 Greenl. Ev. [15 Ed.], sec. 33.   But if the evidence had been sufficient to establish that defendant had disinterred Mrs. Williamson and buried her in the

brickyard, the State still came short of establishing the charge of either count in the indictment. There was no evidence, as was said in *State v. Fox*, 136 Mo. 139, tending to show that he had offered her body or contracted it for sale; that he had attempted to ship it away from Lemon Station, or that it had a marketable value. The loose remark to Kennedy, if made by defendant, that if he got hard up he could get $20 to $40 in Keokuk or St. Louis for *him* can not be tortured into an admission that he was going to sell Mrs. Williamson's body. He had never admitted he had *her* body. Neither is there any evidence that he obtained it for the purpose of dissecting it, or for the purpose of surgical or anatomical experiment, and so the case must fall because the defendant having been indicted for the violation of *specific statutory provisions* the evidence must establish one of the acts denounced as criminal. Had the case been made out the sentence would have been affirmed, notwithstanding the conduct of the prosecuting witness calls for rebuke. It is obvious that the power of the State was invoked to gratify personal spite, and not to maintain the dignity of the law. But in our opinion neither charge was substantiated. Suspicion founded wholly upon the inconclusive circumstance of the finding of a lot of buried clothes twelve months after they were alleged to have been buried in an open lot, accessible to the public, will not suffice to establish the *corpus delicti* of the offense charged in the indictment. The judgment is reversed and prisoner discharged. SHERWOOD and BURGESS, JJ., concur.