State v. Fox.

THE STATE v. FOX, Appellant.

Division Two, March 7, 1899.

|148 517|
| 85a 382|.

1. **Indictment**: DUPLICITOUS: WHEN AND HOW RAISED. It is too late to challenge in the motion for a new trial and in arrest a count in an indictment as being duplicitous. This must be done by a motion to quash, or by demurrer, or by a motion to compel the State to elect on which of the offenses charged it will proceed to trial, filed before the trial begins, and unless the objection is raised in one of these ways it is waived.

2. ——: DUPLICITY: DEFINITION. Duplicity in an indictment is the joinder of two or more distinct offenses in one count, and is a defect of such mere form as is cured by the verdict.

3. **Robbing Grave**: PURPOSE MUST BE SHOWN. Under an indictment drawn under section 3842, Revised Statutes 1889, charging defendant with removing a dead body from the grave for the purpose of dissection or surgical or anatomical experiment, etc., it is not sufficient to show that he removed the body from the grave, but it must also be shown what his purpose was. Nor can such purpose be inferred from the fact that defendant dug up said body or had it in his possession.

4. **Defective Instruction**: EQUIVALENT TO MOTION FOR PROPER INSTRUCTION: ALIBI. Where alibi is a defense in a case, and defendant has asked a misleading instruction on that head, it should be refused, but the court should give a proper instruction on that theory if the one offered is sufficient to call the court's attention to the fact that it had not instructed on that question.

State v. Fox.

*Appeal from Chariton Circuit Court.*—HON. W. S.
STOCKWELL, Special Judge.

REVERSED AND REMANDED.

PERRY S. RADER and LUTHER N. DEMPSEY for appellant.

(1) The second count of the indictment is duplicitous;
distinct, inconsistent and repugnant offenses are charged
therein. State v. Flint, 62 Mo. 393; State v. Huffman, 136
Mo. 65; State v. Shields, 8 Blackford (Ind.), 151; State v.
Clavenger, 20 Mo. App. 628; State v. Bach, 25 Mo. App.
557; State v. Gibson, 111 Mo. 100; State v. Mahan, 2 Ala.
340; King v. Stevens, 5 East 244; 1 Bishop on Crim. Proc.
(3 Ed.), secs. 489-492; State v. Bridges, 24 Mo. 353; State
v. Meyers, 99 Mo. 114. (2) The offenses or purposes
charged being repugnant, the indictment should have charged
them disjunctively, and not conjunctively, as was done. State
v. Fitzsimmons, 30 Mo. 236; State v. McCullom, 44 Mo.
343; State v. Flint, 62 Mo. 393; State v. Fairgrieve, 29 Mo.
App. 641; State v. Gibson, 111 Mo. 97; State v. Goodwin,
33 Kan. 538; State v. James, 37 Mo. App. 218. (3) The
evidence was insufficient to support the verdict. There was
a total failure of evidence showing any of the purposes
charged. State v. Gibson, 111 Mo. 99; Lawson on Presumptive Ev., p. 271; People v. Plath, 100 N. Y. 590; State
v. Johnson, 115 Mo. 496; State v. Fox, 136 Mo. 139; State
v. Baker, 144 Mo. 323; State v. Gibson, 108 Mo. 580; State
v. Hunt, 91 Mo. 490; State v. Castor, 93 Mo. 242; State v.
Daubert, 42 Mo. 242; State v. Mansfield, 41 Mo. 471; State
v. Brinkman, 40 Mo. App. 284; State v. Marshall, 47 Mo.
378; State v. Primm, 98 Mo. 368; State v. Packwood, 26 Mo.
340; State v. Jaeger, 66 Mo. 173. (4) Positive proof of
the intent of the removal was necessary. The mere removal

did not establish any intent.   Therefore the giving of the fifth instruction for the State, and the refusal of that part of defendant's sixth instruction inclosed in parenthesis, was error.   State v. Gibson, 111 Mo. 99; Lawson on Presumptive Ev., p. 271; People v. Plath, 100 N. Y. 590; State v. Johnson, 115 Mo. 496; State v. Baker, 144 Mo. 330; State v. Fox, 136 Mo. 144.   (5)   The court erred in refusing defendant's instruction 3, concerning the defense of alibi. That was the only instruction offered which presented that defense. It was at least tantamount to a request for an instruction on that theory of the case.   State v. Davis, 141 Mo. 526; State v. Adler, 146 Mo. 18.

EDWARD C. CROW, Attorney-General, for the State.

BURGESS, J.—Defendant was convicted in the circuit court of Chariton county at its April term, 1898, and his punishment fixed at two years' imprisonment in the penitentiary, for having at said county feloniously dug up, disinterred and removed the dead body and remains of a human being from the grave in which it was interred, for the purpose of dissection, surgical and anatomical experiment, and preparation.   He appeals.

The case was here on a former occasion [State v. Fox, 136 Mo. 139], to which reference may be had for a statement of the facts.   The judgment was then reversed and the cause remanded upon the ground of there being no evidence to sustain the verdict.   After the case was remanded a new indictment was preferred against defendant containing two counts, which, leaving off the formal parts, are as follows:

"The grand jurors for the State of Missouri, summoned from the body of the county of Chariton, in the State of Missouri, and impaneled, sworn and charged to inquire within and for the body of the said Chariton county, upon their

oath, do charge and present that one James R. Fox, on or about the seventh of March, A. D. 1895, at and in the county of Chariton and State of Missouri, did then and there unlawfully and feloniously dig up, disinter and remove the dead body and remains of a human being, to wit, the dead body and remains of one Leona Gates, deceased, from the grave in which said dead body and remains had then and there before been interred, and then and there was, for the purpose of selling said dead body and remains, against the peace and dignity of the State.

"The grand jurors, aforesaid, upon their oath aforesaid, do further charge and present that one James R. Fox, on or about the seventh day of March, A. D. 1895, at and in the county of Chariton, and State of Missouri, did then and there unlawfully and feloniously dig up, disinter and remove the dead body and remains of a human being, to wit, the dead body and remains of one Leona Gates, from the grave in which the said dead body and remains had then and there before been interred, and then and there was, for the purpose of dissection and surgical and anatomical experiment, and preparation of said dead body and remains, against the peace and dignity of the State."

It was under the second count that the conviction was had.

The facts disclosed upon the last trial were not materially different from the first.

At the close of all the evidence defendant interposed a demurrer to the evidence which was overruled, and exceptions duly saved. The prosecuting attorney then elected to stand on the second count in the indictment.

At the instance of the State, and over the objection and exception of defendant, the court instructed the jury as follows:

1.   The court instructs the jury that the defendant in this case is presumed to be innocent, and not guilty as

charged, and you should act upon this presumption of inno-
cence and acquit him, unless you shall find and believe from
the evidence in the case, beyond a reasonable doubt, that he
is guilty.    Such a doubt to authorize an acquittal should be
a substantial doubt and not a mere possibility of defendant's
innocence.

2.    The defendant is a competent witness testifying in
his own behalf, and you should fully and fairly consider his
testimony, together with all the other testimony  in the case,
but you may take into consideration the fact that he is tes-
tifying in his own behalf and the interest he has in the result
of the trial as affecting his credibility as a witness.

3.    The jury are the sole judges of the credibility of
the witnesses and the weight and value to be given to their
testimony, and if you find and believe from the evidence in
the case that any witness has willfully sworn falsely to any
material fact involved in the trial of this case, then you are
at liberty to reject and treat as untrue any or all of such wit-
ness' testimony.

4.    If the jury shall find and believe from the evidence,
beyond a reasonable doubt, that the defendant, on or about
the seventh day of March, 1895, at and in the county of Char-
iton and State of Missouri, did then and there dig up, disinter
and remove the dead body and remains of Leona Gates, de-
ceased, from the grave in which said dead body and remains
had been interred, and then and there was, for the purpose of
dissection, and surgical and anatomical experiment and prep-
aration of said dead body and remains, then you should find
him guilty as charged in the second count of the indictment.

5.    The jury are instructed that the intent of the de-
fendant in removing the dead body of Leona Gates from the
grave where it had been interred, if you find that he removed
said body, need not be proved by direct and positive testi-
mony, but may be inferred from the facts and circumstances
in proof.

Defendant asked the following instructions:

I.   The court instructs the jury that they are the sole judges of the testimony and weight and value to be given to it, and of the credibility of the witnesses; and in determining the credibility of a witness, the jury may take into consideration the manner and appearance of the witness on the stand, the reasonableness of the witness' testimony, his interest, if any, in the result of the trial; and if the jury believe from the evidence that any witness has willfully sworn falsely as to any material fact in this case, they are at liberty to disregard the whole or any part of the testimony of such witness.

II.   The court instructs the jury that before you can convict the defendant, it devolves upon the State to prove by credible evidence, beyond a reasonable doubt, the guilt of the defendant as charged in the indictment. And in this connection, the court instructs the jury that a reasonable doubt exists when your minds are in that condition that you are neither morally certain that defendant is guilty nor yet morally certain that he is innocent. And if you are neither morally certain that he is innocent, nor yet morally certain that he is guilty, you must acquit him.

III.   The court instructs the jury that if you find from the evidence that the defendant, J. R. Fox, was in the town of Marceline from nine o'clock Monday evening, March 7, 1895, till half after eleven or twelve o'clock that night, then you must acquit him.

IV.   The court instructs the jury that the indictment charges the defendant with stealing the dead body of Leona Gates; and unless the State has proved by credible evidence beyond a reasonable doubt that he was at the graveyard in said Chariton county, as described in the indictment on or about the night of March 7, 1895, and took said body from the grave, you can not convict the defendant.

V.   The court instructs the jury that although you may believe from the evidence that a corpse was found in the store-

room of the defendant, in the town of Marceline, on or about March 8, 1895, or a few days thereafter, yet unless you believe from the evidence, beyond a reasonable doubt, the said corpse was that of Leona Gates, and not that of some other person, and that this defendant had taken it from the grave, you can not convict the defendant.

VI. The court instructs the jury that under the indictment as it now stands, the defendant is charged with removing a dead body from the grave for the purpose of dissection, or surgical or anatomical experiment and preparation. Unless, therefore, you find from the evidence that it was the purpose and intention of the defendant to use said dead body for dissection or surgical and anatomical experiment and preparation, you will acquit him, even though you may believe that the defendant did actually remove said body from the grave. You are instructed that under the law the mere removal of the dead body from the grave is not a sufficient cause for convicting the defendant, and that said removal in this case was not unlawful or felonious unless the purpose and intent of the person who removed said body were to use it for dissection, or for some surgical or anatomical experiment or preparation. (And in determining whether such purpose or intent existed, you are not left to a mere conjecture as to what the defendant's purpose might have been, even though you may believe he removed the body from the grave, nor can you infer or surmise what the purpose was, but you must determine from the evidence in the case, as sworn to by the witnesses, beyond a reasonable doubt, that such was the actual purpose for removing said body from the grave. And if you believe from the evidence that the purpose in removing said body from the grave was for selling the same, or for any other purpose except for use in dissection, or surgical and anatomical experiment and preparation, you must acquit the defendant.)

VII.   The court instructs the jury that the intent or
purpose of the removal of the body from the grave must be
proved like any other fact, from all the facts and circum-
stances in evidence.

The court gave defendant's instructions I, II, IV and
VII, as asked, and refused instructions III and V, and modi-
fied instruction VI by striking out all that part thereof in-
closed in parenthesis, beginning with the words, "And in de-
termining whether such purpose," and giving all that part
thereof preceding said parenthesis, and refusing to give that
inclosed within said parenthesis.

To the action and ruling of the court in refusing de-
fendant's instructions III and V, and in modifying instruc-
tion VI, and refusing to give all that part thereof inclosed
in parenthesis, the defendant then and there objected and
excepted at the time and saved his exceptions.

The indictment was drawn under section 3842, Revised
Statutes 1889, which is as follows:   "Every person who shall
remove the dead body or remains of any human being from
the grave or other place of interment or sepulture, for the
purpose of selling the same, or for the purpose of dissection,
or any surgical or anatomical experiment or preparation, or
for mere wantonness or mischief, shall be adjudged guilty
of a felony, and upon conviction, shall be punished by im-
prisonment in the penitentiary not exceeding five years."

The second count in the indictment is challenged upon
the ground that it is duplicitous, in that it contains allega-
tions that are repugnant and inconsistent with each other.

This objection was raised for the first time in the
motions for new trial and in arrest which was too late, and
must be held to have been waived by the failure of defend-
ant to move to quash this count, or by demurrer, or by
motion to compel the State to elect upon which one of the
offenses alleged therein (if more than one) it would proceed

to trial. [State v. Armstrong, 106 Mo. 395; St. Louis v. Weitzel, 130 Mo. loc. cit. 613; 1 Bishop, Crim. Proc. (3 Ed.), secs. 442, 443; Wharton's Crim. Pleadings, secs. 255, 760; Commonwealth v. Tuck, 20 Pick. 356; People v. Burgess, 35 Cal. 115; Scruggs v. State, 7 Baxter, 38.]

It can not be taken advantage of for the first time in arrest or by writ of error. [Tucker v. State, 6 Tex. App. 251; Commonwealth v. Tuck, *supra.*] Nor by motion for a new trial. [Simons v. State, 25 Ind. 331.] Bishop says: "Duplicity in an indictment is the joinder of two or more distinct offenses in one count." [1 Bishop's Cr. Proc. (3 Ed.), sec. 432. The same learned author says: "In matter of principle, it would seem to be a defect of such mere form as ought to be deemed cured by the verdict, because the objection is one which relates simply to the convenience of the defendant in making his defense, while by not taking the objection he seems to have suffered no inconvenience, and therefore to have waived it." [Id., sec. 443.] Wharton says: "Duplicity in criminal cases may be objected to by special demurrer, perhaps by general demurrer, or the court in general, upon application, may quash the indictment; but it is extremely doubtful if it can be made the subject of a motion in arrest of judgment, or of a writ of error, and it is cured by a verdict of guilty as to one of the offenses, and not guilty as to the other." [1 Whart. Cr. Plead., sec. 255.]

We however, do not wish to be understood as holding that if the defendant had filed a motion to quash or had demurred to the indictment because of its duplicities, before trial, the motion or demurrer, as the case may have been, should have prevailed.

It is also claimed that the evidence was insufficient to support the verdict. The evidence showed conclusively we think that defendant dug up and removed the dead body of Leona Gates from the grave in which it had been interred,

but what his intent was in so doing, whether for the purpose of dissection, or surgical, or anatomical experiment or preparation, if either, we must look to the evidence, if any, to determine. While the evidence showed that defendant was a student of medicine and that he stated to J. F. Wood who was present at the time he dug up the body and assisted him in carrying it away, that his professor at Kansas City would give $50 for such a subject to work on, the evidence did not show that he dug up the body either for the purpose of dissection, or surgical, or anatomical experiment, some one or more of which was necessary in order to his conviction.

In State v. Baker, 144 Mo. 330, the defendant was indicted under the same statute. The indictment was in three counts. He was charged in the first count with digging up the body for the purpose of selling it, in the second for the purpose of dissecting it, and in the third for the purpose of surgical and anatomical experiment and preparation. The court held that there was no evidence that defendant dug up the body for either of the purposes charged in the indictment, and that the case "must fall because the defendant having been indicted for the violation of specific statutory provisions the evidence must establish one of the acts denounced as criminal." See also State v. Fox, *supra*.

The statute does not make the person removing the dead body or remains of a human being from the grave or other place of interment or sepulture guilty of a criminal offense, but in order to do so, it must be made to appear that it was done for one of the purposes mentioned therein, and such purpose can not be inferred from the mere fact of the digging up and having in possession such body.

In State v. Gibson, 111 Mo. loc. cit. 99, it is said: "Where the statute makes an offense to consist of an act coupled with a specific intent, the doing of the act raises no presumption that the act was done with the specific intent;

but such intent, as well as the act, must be found by the jury as a matter of fact before a conviction can legitimately re-sult." The court further said, on page 102: "Where a specific intent is required to make an act an offense . . . the mere doing of the act will not raise a presumption that it was done for such prohibited purpose." Lawson on Presumptive Evidence, page 271, and People v. Plath, 100 N. Y. 590, are cited in support of this "elementary rule." See also State v. Johnson, 115 Mo. loc. cit. 496.

If the defendant is guilty of any offense under the statute and the evidence it is that of mere wantonness, with which he is not charged in the indictment.

A final contention is that the court erred in refusing to give the third instruction asked by defendant. This instruction is of course bottomed upon the testimony of defendant to the effect that he was in Marceline during the entire night of March 7, 1895, the night upon which the offense is alleged to have been committed, but it is mislead-ing for the reason that he might have been in Marceline during the time mentioned in the instruction, and yet have been guilty of the offense, for it may have been committed earlier or later than between nine, and twelve o'clock on that night, or upon some other night prior or subsequent thereto. It was therefore properly refused. But there was no instruction given upon this theory of the case, that is, alibi, and although the instruction asked was incorrect, by it the court's attention was sufficiently called to the fact that it had failed to instruct upon that question, which was its duty to do after having in effect been so requested. [State v. Davis, 141 Mo. 526; State v. Adler, 146 Mo. 18.]

For these considerations we reverse the judgment and remand the cause. GANTT, P. J., and SHERWOOD, J., concur.