# THOMPSON *v.* STATE.

## (*Jackson.*    June   25,   1900.)

1. MISDEMEANOR.   *Unauthorized disposition of corpse is.*

    The unauthorized disposition and sale of the dead body of a human being for gain or profit is a common law misdemeanor of high grade and *malum in se.*   (*Post, pp. 180–182.*)

2. SAME.   *Unsuccessful attempt to dispose of corpse is.*

    An attempt to make an unauthorized disposition and sale of the dead body of a human being for gain or profit is likewise a misdemeanor at common law.   (*Post, pp. 182, 183.*)

    Case cited and distinguished: Whitesides *v.* Sate, 11 Lea, 474.

3. SAME.   *Employer and employee.*

    Where employer and employee participate, as such, in the commission of a misdemeanor, they are joint principals.   (*Post, p. 185.*)

    Cases cited: Atkins *v.* State, 95 Tenn., 474; Whitesides *v.* State, 11 Lea, 474.

4. INDICTMENT.   *Sufficient for attempt to sell corpse.*

    An indictment for an attempt to sell a corpse is not objectionable as uniting several distinct offenses in one count, which avers that the corpse was delivered to one of the defendants, as an undertaker, for burial; that he and his co-defendant conspired not to bury, but to dispose of it for profit and gain to themselves, and that, thereupon, they packed it in a trunk and shipped it away for sale, etc.   The true legal import of this indictment, disregarding superfluous narrative, is that defendants made a joint and unlawful attempt to dispose of the corpse for profit and gain to themselves, and this is sufficient.   (*Post, pp. 179, 180.*)

5. PUNISHMENT.   *How inflicted.*

    Where a misdemeanor is punishable by both fine and imprisonment, or by either, it is competent for the Court, after the jury has imposed a fine, *e. g.*, of $750, as was done in this

21 P—12

Thompson *v.* State.

case, to add, in his discretion, imprisonment, *e. g.*, eleven months and twenty-nine days, as was done in this case. (*Post, p. 185.*)

6. SAME. *Of joint offenses.*

Although defendants are jointly tried and convicted for their joint offense, it is proper to inflict separate punishment, and each must respond to and satisfy his own sentence. (*Post, pp. 185, 186.*)

---

FROM SHELBY.

---

Appeal in error from Criminal Court of Shelby County. L. P. COOPER, J.

JOHN T. MOSS and M. B. NORFLEET for Thompson.

Attorney-general PICKLE for State.

CALDWELL, J. Frank Thompson and E. D. Thompson are under conviction for a joint attempt to dispose of and sell for profit and gain to themselves the dead body of Jennie McGuire, a pauper, which was intrusted to them for burial; and the punishment assessed against each of them is a fine of $750 and imprisonment in the county workhouse for the period of eleven months and twenty-nine days.

Having appealed in error, they seek a reversal for numerous reasons, assigned by their counsel. It is said, in the first place, that the indict-

Thompson *v.* State.

ment charges three separate offenses in one count —(1) failure to bury; (2) conspiracy not to bury, but to sell; (3) attempt to sell—and, hence, that the motion to quash should have been sustained in the lower Court and should now be sustained in this Court.

The indictment does state that the body in question was delivered to E. D. Thompson, County Undertaker, for burial; that he and Frank Thompson confederated and conspired not to bury, but to dispose of it for profit and gain to themselves, and that thereupon they packed it in a trunk and shipped it away for the purpose of sale, etc., yet the true legal import of the charge, when rightly interpreted, is that the two defendants made a joint and unlawful attempt to dispose of the body for profit and gain to themselves; that is the real gravamen of the State's action, so to speak, the other parts being in the nature of mere description or inducement, and largely unnecessary. It is an indictment on the facts of the case, with some superfluity of narration. The statement of the failure to bury the body is not to be taken as a separate and distinct charge, but rather as a mere narrative of a fact leading up to the offense of shipping the body away for unauthorized sale; and the other statement that the defendants confederated and conspired not to bury, but to sell the body, is only an over-formal charge of joint action on

their part in the attempted sale, and not an independent charge of unlawful conspiracy. Then, does the indictment, so interpreted and limited, charge an offense cognizable in a Criminal Court? Confessedly, we are without a statute creating such an offense; hence, unless it existed at common law or can properly be evolved from the principles of the common law, either of which would be sufficient, it does not exist at all.

Civilized countries have always recognized and protected as sacred the right to Christian burial and to an undisturbed repose of the human body when buried.

The willful, unlawful, and indecent taking and carrying away of the dead body of an unknown person, with the intent to sell and dispose of the same for gain and profit, to the scandal and disgrace of religion and in contempt of the laws and customs of the realm, was held to be an indictable offense in *R.* v. *Gilles,* 1 Russ. on Crimes, 464. And the disinterment of the body of a human being for the purpose of dissection was held to be indictable at common law in *R.* v. *Lynn,* 2 T. R., 733; 1 Leach, 497, and in *Kanavan's case,* 1 Me., 226. These cases, and many others with kindred rulings, are cited and more elaborately stated on pages 391 and 392 of Roscoe's Criminal Evidence, on page 464 of 1 Russell on Crimes, and in note A, 42 L. R. A., 733. One of the other

cases is more closely related to that now before the Court. Of it Roscoe says: "In *R.* v. *Feist,* Dear. & B. C. C., 500 (S. C., 27 L. J. M. C., 164), the defendant was the master of a workhouse, and had lawful possession of the bodies of deceased paupers. He was in the habit of having the appearance of a funeral gone through, with a view of preventing the relatives requiring that the bodies should be buried without being subject to anatomical examination; and the jury found that but for that deception, the relatives would have required the bodies to be so buried. The bodies, instead of being buried, as was supposed by the relatives, were delivered to an hospital for the purpose of undergoing anatomical examination, and for this service the master received from the hospital a sum of money. The prisoner was found guilty of an offense at common law in disposing of a body for dissection," but the appellate Court, though approving that finding, held that he was protected by statute. Roscoe's Cr. Evi., 392.

Bishop, in the course of his chapter on "Protection to the Public Morals, Religion, and Education," employs the following language, namely: "Moreover, as tending to corrupt the public morals, and as disturbing the sensibilities of the people, are such acts as casting the dead body of a human being into the river without the rites of Christian sepulture; the stealing of a corpse; the digging of it up, where buried, or

conveying of it away from the burial ground for
sale or for dissection; and the selling, for dissec-
tion, of the dead body of a person capitally con-
victed and executed, when the sentence did not
direct such disposition of it. These are all in-
dictable offenses at the common law." 1 Bish. Cr.
L., Sec. 950.

It is broadly stated by numerous authorities
that every attempt to commit a felony or a mis-
demeanor, whether the attempted offense be such
at common law or by statute, is itself a misde-
meanor at common law. Clark's Cr. Law, 104;
Roscoe's Cr. Evi., 282; Bish. Cr. Law, Sec. 683;
1 Russ. on Crimes, 47, and citations by all of
them.

Bishop says, however, by way of exception or
qualification, that "no mere attempt to commit
some of the smaller misdemeanors is a sufficient
dereliction from duty to be indictable" (Sec. 684),
and that "some offenses cannot have the appendage
of attempt because of their little magnitude." Sec.
687.

The substance of the rule enunciated in the
second edition of the Am. & Eng. Enc. of Law,
Vol. 3, pp. 252, 253, is that an attempt to com-
mit a misdemeanor is not indictable at common
law, when the offense attempted is merely *malum
prohibitum,* but only when it is *malum in se,*
and that some misdemeanors that are *mala in se*

are of such a nature as, not to admit of indictable attempts to commit them.

This Court held, in *Whitesides* v. *The State*, 11 Lea, 474, that an attempt to commit a misdemeanor that "is purely statutory" is not indictable at the common law.

But, without multiplying citations or dwelling further upon the contrariety of opinion in the particulars indicated, it may be safely stated that the authorities are harmonious on the proposition that the unauthorized disposition and sale of the dead body of a human being for gain and profit, is a common law misdemeanor of high grade, and *malum in se,* and that an unsuccessful attempt to commit that offense is itself a misdemeanor, indictable and punishable at the common law.

It follows, therefore, that the present indictment, which charges such attempt, and that only, is good, and that the motion to quash was properly overruled.

The other objections urged against the judgment below do not require elaborate consideration. Of those directed against the Court's rulings as to the admissibility of certain evidence and against the charge to the jury, it is sufficient to say, generally, that none of them present any reversible error.

The evidence of guilt on the part of each defendant is plenary. It shows that Jennie McGuire, a white woman and pauper, died in the

poorhouse of Shelby County, Tennessee; that, after suitable preparation, her dead body was, by direction of the superintendent of that institution, delivered to the defendant, E. D. Thompson, as County Undertaker, for burial; that, thereafter, he and the other defendant, Frank Thompson, who was in his employment, placed the body in a short metal box, which, after sealing, they put in a trunk; that this trunk, when securely locked, and three others, each containing the dead body of a negro, similarly packed, were by them shipped to St. Louis, Mo., where the defendant, Frank Thompson, was apprehended by officers of the law with the four trunks and their contents in his charge, and whence they were to be transported, at his instance, to Keokuk, Iowa, under a fictitious name, but in fact for a certain person of that city who was to pay $50 for each of the four bodies for purposes of dissection.

The defendants are not protected by Chapter 206 of the Acts of 1899, which provides for the disposition of certain unclaimed bodies, because they made no effort to comply with the requirements of that Act, but pursued their own course without reference to it. They are equally without the protection of the last clause of § 6775 of Shannon's Code, which authorizes dissection "by consent of relatives," for they had no such consent. The only surviving relative of Jennie McguiI, so far as known, was a brother residing

in another State, and he seems to have been entirely ignorant of her death until after her body had been taken to St. Louis. The only authority the defendants had in respect of this body was to give it decent burial; and that authority was violated in the manner already stated, and that, too, long after E. D. Thompson had been admonished by a proper representative of the county that he had no right to sell for dissection bodies intrusted to him for burial.

It is of no legal consequence that Frank Thompson may have been but an employee of his co-defendant, nor that one of them may have done more than the other in unlawful effort to dispose of and sell this body, since the criminal law does not recognize the civil relation of principal and agent, and treats all participants in the commission of misdemeanor as joint principals. *Atkins* v. *State,* 95 Tenn., 474; *Whitesides* v. *State,* 11 Lea, 475.

The offense of which the defendants have been convicted is punishable by both fine and imprisonment, or by either (1 Bish. Cr. L., Sec. 719), and after the jury had found them guilty and assessed a fine against them, it was within the province of the trial Judge, in the exercise of a sound discretion, to superadd imprisonment as he did.

Though joint actors in the commission of the same offense, and jointly tried and convicted, it

was proper that punishment be inflicted upon the defendants separately, as if each had committed the offense alone (1 Bish. Cr. L., Sec. 732); and each is bound to respond in full to his own separate sentence, satisfaction, in whole or in part, of that against one of them not satisfying that against the other one in any sense or to any extent.

Let the judgment be affirmed.