27780. DAVIS *et al. v.* THE STATE.

380

DECIDED NOVEMBER 8, 1939.  REHEARING DENIED DECEMBER 16, 1939.

*Heath & Heath,* for plaintiffs in error.

*W. Glenn Thomas, solicitor-general,* contra.

GUERRY, J.  Robert Lee Davis, Henry Davis, and Monroe Jones were jointly convicted in the superior court of Jeff Davis County, at the adjourned September term, 1938, upon the charge that the defendants "unlawfully and with force and arms; did remove from a certain grave in Morgan's Chappel Colored Cemetery, the body of Allen Hodge, wantonly and feloniously, contrary to the laws of said State, the good order, peace, and dignity thereof." The defendants demurred to the indictment on the grounds that it did not charge any crime, or the removal of the body of a human being, or such body from a grave or other place of interment, or for the purpose of selling or dissecting it, or from mere wantonness. The court overruled the demurrer and the defendants excepted pendente lite. The defendants filed their motion for new trial which was overruled. The case is before this court on exceptions to the order overruling the motion for new trial and the exceptions pendente lite to the order overruling the demurrer.

The evidence showed substantially that the defendants, acting in concert, went to the open grave of an old negro, Allen Hodge, buried some twenty years before, whose only remains were in skeleton form, and took therefrom the skull containing several gold teeth; that the defendants carried the skull away from the grave a distance of about 100 yards where the teeth were beaten from the jaws and the skull abandoned. The grave had become opened, over the years, by weather processes, sufficiently to admit entrance singly of the defendants. The evidence also showed purported admissions of the defendants of acts of participation incriminating the defendants jointly, which admissions were corroborated by other and extraneous evidence.

The evidence of several witnesses on venue, in substance, was as follows: the grave of Allen Hodge is about 40 to 50 feet over the line in Jeff Davis County; the cemetery is on the side of the

fence next to Jeff Davis County, that's pointed out as the line; the witness does not know whether the grave is in Appling County; the cemetery is on land lot No. 168, and that lot is in Jeff Davis County; the cemetery is in both counties; witness was present when the county line was run between Jeff Davis and Appling Counties, and testified that the graveyard (inclusive of the particular grave) is over in Appling County 30 or 35 feet, or a little more, which testimony was later qualified by stating that the cemetery was in both counties.

The questions to be determined are covered by the headnotes, being more fully discussed hereinafter.

■ From time immemorial civilized nations have sought to protect the graves of the dead and prevent the illegal removal of dead bodies for the purposes of sale, dissection, or from mere wantonness. "Civilized countries have always recognized and protected as sacred the right to Christian burial and to an undisturbed repose of the human body when buried." Thompson v. State, 105 Tenn. 177, 180 (58 S. W. 213, 80 Am. St. R. 875, 51 L. R. A. 883) ; 8 R. C. L. 694, § 16. "The wilful, unlawful, and indecent taking and carrying away of the dead body of an unknown person, with the intent to sell and dispose of the same for gain and profit, to the scandal and disgrace of religion and in contempt of the laws and customs of the realm, was held to be an indictable offense in R. v. Gilles, 1 Russ. on Crimes, 464. And the disinterment of the body of a human being for the purpose of dissection was held to be indictable at common law in R. v. Lynn, 2 T. R., 733, 1 Leach, 497, and in Kanavan's case,. 1 Me. 226." Thompson v. State, 105 Tenn. 177, 180 (supra). "The unauthorized disinterring of the body of a deceased human being is an indictable offense both at common law and by statute, regardless of the motive or purpose for which the act is done." 8 R. C. L. 694, § 16. The section under which the indictment in the instant case was drawn, was codified from the acts of 1887, page 87, and bears striking similarity to a New York statute given under the following quotation: "Every person who shall remove the dead body of any human being from the grave, or other place of interment, for the purpose of selling the same, or for the purpose of dissection, or from mere wantonness, upon conviction shall be punished by imprisonment in a State's prison." Rhodes v. Brandt, 21 Hun. (N. Y.) 1, 3.

■ The inhibitions of the law apply equally to any part of the body and to the body as an entire unit. We do not find that the exact question has been decided in Georgia or other States. In *Meads* v. *Dougherty County*, 98 *Ga.* 697 (25 S. E. 915), it was held that "a lot of bones bleached by time," found casually upon the bank of a creek, did not constitute "a dead body" within the purview of the act of 1893, requiring coroners to hold inquests upon the dead bodies of human beings, relative to determining the cause of death coming within the inquiry of the statute whether the death had been "violent, sudden or casual," or in the absence of witnesses or an attending physician. Yet, whatever may have been the juridic value of the above holding, we find the court in *Floyd County* v. *Miller*, 4 *Ga. App.* 1, 3 (60 S. E. 823), observing: "In the *Meads* case the few bleached bones that had been washed upon the banks of the creek were held not to constitute a dead body; and very naturally the opinion was expressed that it was not apparent from these bones that violence had caused the death. All that was said, however, in the *Meads* case was mere obiter dicta." In a New York case we find, with reference to a dead body being exhumed by next of kin so that a portion of the body might be removed and used for evidentiary purposes in a trial for malpractice, the court held that "it did not constitute a removal of the body for the purpose of dissecting, or from mere wantonness, as these terms were used in the statute." 17 C. J. 1150, § 33; Rhodes *v.* Brandt, 21 Hun. (N. Y.) 1. It appears that the court was passing upon the *purpose* of the removal, rather than the question whether a removal of a part was within the inhibitions of the law against removal of the whole. While all references in Georgia or other jurisdictions seem to refer to the subject-matter of removal simply as a "dead body," there inheres in the authorities upon the subject no reason in law or logic why the prohibition against removal of the body of a dead human being does not apply equally to any part thereof. Otherwise the law would be inane in permitting unbridled robbing of graves and the wanton use of and trafficking in dead bodies, provided only some small part of the body yet remained to stay the processes of the law.

■ There can be no offense under the statute in question without a removal from the grave or other place of interment; a shifting of the body would not be sufficient. In *Ware* v. *State*, 30 *Ga.*

*App.* 354 (118 S. E. 71), the court held, with reference to the question whether there had been an unlawful removal of a dead body, when the body had been lifted sufficiently only for removal of the coffin, as follows: "An indictment charging the unlawful removal of a dead body 'from its grave and place of interment' was not supported where the evidence failed to show that the body was removed from the grave, but showed that the body was merely lifted up in the grave and there taken out of its coffin and laid back in its place when the coffin was being stolen." "Where a person merely dug down to a coffin to search the body for valuables without removing the body, it was held that he could not be convicted of a felony, under Cal. Pen. Code, § 290" (People *v.* Baumgartner, 135 Cal. 72, 66 Pac. 974), it being observed by the court: "The desecration had for its only object to secure the money supposed to be buried with the body. . . In order to constitute the crime of disinterment, under a statute making it an offense to disinter or to remove from the place of sepulture the dead body of a human being, it is necessary that there be a removal of the body." But a removal, of itself, will not constitute the offense unless done for the purpose of sale, dissection, or from mere wantonness, and not by authority or permission of the law. "Statutes against body stealing are not intended to apply to exhumations made by legally-constituted public authorities for the purpose of ascertaining whether crime has been committed." 8 R. C. L. 694, § 16. Nor would it be unlawful where permission is given for the removal by those in whom lie the right of burial and disposition of the bodies. "We have found no law making it penal for bodies to be disinterred from a cemetery under such circumstances as were shown in this case, in which the disinterments appeared to have been done by and with the consent of relatives entitled to control the burial and disposition of the bodies." *Fairview Cemetery Co.* v. *Wood,* 36 *Ga. App.* 709, 720 (138 S. E. 88). The intendment of the law, however, we find definitely in the preamble of the act from which the statute was codified: "An act for the protection of cemeteries and burying-places in this State, and to prevent and punish the unauthorized use of and traffic in dead human bodies." Acts 1887, p. 87.

While the indictment must allege all the essential elements of the offense, and nothing material to the issue may be taken by

intendment, yet a substantial charge in the language of the Code will be sufficient. It need not allege that the body is that of a human being when that fact may appear from the language used. An indictment "charging the disinterring of a dead body need not allege that it was the body of a human being, as that fact will be assumed, but the name of the person whose body was disinterred must be stated or a reason must be assigned for the failure to state it." People *v.* Graves, 5 Park Cr. (N. Y.) 134; State *v.* Little, 1 Vt. 331; Williamson *v.* State, 44 Tex. Cr. 520 (72 S. W. 600). We think the allegation in the indictment that there was removed "from a certain grave in Morgan's Chappel Colored Cemetery, the body of Allen Hodge" was sufficient to describe the body as that of a human being.

While "an indictment drawn under a statute making it an offense to remove a dead body with the intent to use or dispose of it for the purpose" as prohibited by the statute, "must aver such intent or it will be fatally defective" (Com. *v.* Slack, 19 Pick. (Mass.) 304; 17 C. J. 1150, § 35), and the "mere doing of the act will not raise a presumption that it was done for such prohibited purpose" (State *v.* Baker, 144 Mo. 323, 46 S. W. 194), nevertheless "the specific criminal intent may be presumed from the manner in which the act is performed and the attending circumstances" (State *v.* Schaffer, 95 Iowa, 379, 64 N. W. 276), and, we may add, especially where those circumstances show in the wanton removal an intent to commit, collaterally, another and separate crime—in this case, theft of the gold teeth. The indictment alleges that the removal was "wantonly and feloniously" done, and does not allege, literatim, that it was done "from mere wantonness." We think it makes no difference. The adjective "mere" in the expression "mere wantonness" is not intended to qualify the degree of the wantonness, but rather is used to contradistinguish this prohibited purpose from the other remaining prohibited purposes used in the section, those of sale and dissection. The indictment was sufficient in this particular.

Venue is a jurisdictional fact and must be proved beyond a reasonable doubt. *Gosha* v. *State, 56 Ga.* 36; *Moye* v. *State, 65 Ga.* 754; *Mann* v. *State, 41 Ga. App.* 320 (152 S. E. 854); *Taylor* v. *State, 154 Ga.* 68 (113 S. E. 147); *Walker* v. *State, 30 Ga. App.* 275 (117 S. E. 822); *Williamson* v. *State, 58 Ga. App.* 389 (198 S. E. 552). The crime was committed in Appling County, or Jeff

Davis County, or on the boundary line of one or the other. It became the province of the jury to determine under proper charge of the court where the crime took place, whether in the one or the other of the counties, or on their common boundary line. The court, in addition to giving in charge the law with reference to venue being proved to be in the county as alleged, also instructed the jury with reference to the crime having been committed on the boundary line of the named counties, in which event, it being so proved, the County of Jeff Davis still would have jurisdiction, and gave in charge Code, § 27-1103, relative thereto, as follows: "When an offense shall be committed on the boundary line of two counties, it shall be considered and adjudged to have been committed in either county, and an indictment for such offense may be found and tried, and conviction thereon may be had, in either of said counties." To this charge the defendants excepted. The evidence of the State was plain and unequivocal that the grave itself was located in Jeff Davis County. The evidence for the defendants was that the cemetery in which the grave was located was partly in Jeff Davis County and partly in Appling County. Jim Coward testified: "Part of the cemetery is in Jeff Davis and part in Appling County." W. R. Crosby, another witness for the defendants, testified: "The church and cemetery are in both counties, a part in Jeff Davis and a part in Appling." Neither of the witnesses testified as to what part of the cemetery contained the grave of Allen Hodge. If such indefinite testimony should be considered by the jury as sufficient to raise an issue as to which county contained the grave of Allen Hodge, and the exact location of the county line with reference to the grave was in doubt, it was not improper for the court to charge that if they found from this evidence that the grave was on the county line jurisdiction of the crime might be had in either county, and properly in Jeff Davis, which in the first instance had assumed jurisdiction. See in this connection *Roberts. v. State,* 145 *Ga.* 78 (88 S. E. 559).

The remaining assignments of error are without merit, including those assigning error on the failure of the court to charge without the requirement of appropriate written requests.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*