State v. Adler.

---

THE STATE v. ADLER, *Appellant.*

Division Two, November 7, 1898.

1. **Murder**: SELF-DEFENSE: NARROW INSTRUCTION. Where there is evidence tending to show that at the time defendant shot deceased he was being pursued by him and a large number of angry and excited people, at least one of whom had an open knife in his hand, another a pistol, and others with parts of bricks, an instruction that restricted the right of defendant to defend himself against the assault of the deceased alone, was too narrow.

2. ———: ———: BRINGING ON DIFFICULTY: ABANDONING IT. Although defendant brought on the difficulty in the first instance, or voluntarily entered into it for some unlawful purpose, the evidence shows that he abandoned it and ran into a store. It is, therefore, *held* that, if he abandoned it in good faith, and when he came out of the store he was pursued by deceased and others acting in concert with him, in such manner as to give defendant good cause to believe and he did believe that they were about to do him great bodily harm, he had the right to shoot and kill any of them if necessary to protect his person from such apprehended danger.

State v. Adler.

3. ——: ——: ——: ——: REFUSED INSTRUCTION: REQUEST FOR PROPER INSTRUCTION. And an instruction intended to present this theory of the case, although properly refused for lack of clearness, is nevertheless sufficient to call the court's attention to such theory and equivalent to a request to instruct thereon.

4. ——: FLIGHT: PRESUMPTION. Flight by the accused for the purpose of avoiding arrest and prosecution, raises the presumption of guilt.

5. ——: SELF-DEFENSE: VOLUNTARILY ENTERING INTO DIFFICULTY. Before a person who has voluntarily entered into a difficulty can be deprived of his right to self-defense, it must appear that he did so for the purpose of wreaking his malice, or taking advantage of an antagonist, or for the purpose of taking the life of some of those present, or of doing them some great bodily harm.

*Appeal from Jackson County Criminal Court.*—HON. JOHN W. WOFFORD, Judge.

REVERSED AND REMANDED.

*Blake L. Woodson* and *Isaac B. Kimbrell* for appellant.

(1) Instruction 10 is erroneous, in that it limits defendant's right of self-defense to the assault made by deceased alone upon him, and leaves out of consideration his right to use a weapon, if necessary, to protect himself from harm threatened by the mob of angry and excited men, who armed with a knife, a revolver, and bricks and stones, were aiding and acting in concert with deceased in his assault upon defendant at the time the fatal shot was fired. *State v. Partlow*, 90 Mo. 608. (2) Defendant did not try to avoid arrest and trial. *State v. Fairlamb*, 121 Mo. 137; *State v. Hopper*, 142 Mo. 478. (3) Instruction 14 is erroneous. It may state a correct legal proposition, but under the facts in this case, it was a comment upon the evidence and was calculated to confuse and mislead the jury. *State v. Partlow*, 90 Mo. 608; *State v. Rapp*, 142 Mo.

443; *State v. Hopper*, 142 Mo. 478; *State v. Tabor*, 95 Mo. 585. (4) Having called the jury's attention to defendant's duty to withdraw from the difficulty, it was error to refuse instructions 1 and 2, then asked by defendant. (5) It was error to permit the prosecuting attorney to say to the jury that "this man Moran has been mixed up with more than one escapade with this man Adler." The prosecutor had no right to state as a fact what he would not have been permitted to prove even if true.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Instruction 10 herein is not, by considerable, the same instruction as 11, in *State v. Partlow*, 90 Mo. 608. The error therein condemned is carefully guarded against and avoided. The words "but they must also believe from the evidence that the defendant neither sought, invited, provoked nor commenced, by any willful act of his own, said difficulty," are not embodied in letter or meaning in instruction 10 criticised, nor in any instruction in the case. On the other hand, the court satisfied the decisions of this court on the question of self-defense by one who voluntarily enters into a difficulty by giving instruction 14. The plea of provocation will not avail in any case where it appears that the provocation was sought for and induced by the act of the party in order to afford a pretense for wreaking his malice. *State v. Partlow*, 90 Mo. 608; Wharton on Hom. 197; Wharton's Crim. Law, secs. 474–476; 2 Bish. Crim. Law, sec. 715. If the person assailed may safely avoid the danger without resorting to the use of a deadly weapon, he should do so. *State v. Brooks*, 99 Mo. 137. In this case the defendant having withdrawn, all danger to him was past, and the killing

can under no consideration be excused on the ground that it was done in self-defense. *Evans v. The State*, 33 Ga. 4; *Guice v. State*, 60 Miss. 714; *State v. Chavis*, 80 N. C. 353; *Lewis v. State*, 51 Ala. 1.   (2) No error was committed in giving instruction number 12 on the question of defendant's flight.   *State v. Potter*, 108 Mo. 424; *State v. MaFoo*, 110 Mo. 7; *State v. Williams*, 54 Mo. 170; *State v. Gee*, 85 Mo. 647. (3) The statement made by the prosecuting attorney: "I suppose this man, Moran, has been mixed up with more than one escapade with this man Adler," was not such as tended to prejudice the jury against defendant.   And while it may have been improper, yet it could in nowise prejudice defendant's case or injure him in any way.

BURGESS, J.—Defendant was tried and convicted of murder in the second degree, and his punishment fixed at ten years imprisonment in the State penitentiary, for having with malice shot with a pistol and killed one William Johnson.   He was indicted, tried and convicted in Jackson county where the crime was committed.

From the judgment and sentence he appeals.

Briefly stated the facts as disclosed by the record are that about 5 o'clock on the evening of May 2, 1897, defendant and deceased engaged in a quarrel near the crossing of Sixth and Broadway streets in Kansas City, Missouri, during which Adler ran Johnson across Sixth street, then west on the same street, Adler pulling off as he went along a piece of plank, from three to four feet in length, from a board fence or advertisement sign.   Johnson ran into an alley and picked up some pieces of bricks which he began throwing at Adler, and with one of them struck him on some part of the body.   When Adler saw Johnson

picking up the pieces of brick he retreated and ran into a grocery store, being pursued by Johnson and another man who had a knife open in his hand. In the meantime a large number of persons had gathered upon the scene yelling "Hit him, head him off, catch him," etc. Adler remained in the store but a very short time, then returned to the street with a revolver in his hand. There were then present about two hundred persons, whites and blacks, the latter largely preponderating. Johnson was a negro. When Adler come out of the store some one present informed Johnson that he had a gun and was going to shoot. Johnson was then from eighty to ninety feet from Adler and began running, when Adler took after him and fired two shots at him from a pistol, the second of which entered the left back between the tenth and eleventh ribs, passing through the upper end of the left kidney, ranging slightly upwards, passing through the right lower lobe of the right lung, from the effects of which he died within five minutes.

There was some evidence tending to show that at the time of the shooting a large number of the persons present were pursuing defendant, among them the deceased, at least one of whom with an open knife in his hand and another with a pistol, when defendant turned and fired upon deceased.

Soon after the shooting occurred defendant went to Kansas City, Kansas, and when arrested that evening denied being a party to the difficulty.

He entered the plea of self-defense.

The court instructed for murder in the first and second degrees, manslaughter in the fourth degree, and self-defense.

The grounds upon which a reversal of the judgment is sought, are, the giving of erroneous instructions on behalf of the State, the refusal of legal and

proper instructions asked by defendant, and the use of improper language by the prosecuting attorney in the argument of the case before the jury.

But three of the State's instructions are criticised; the tenth, eleventh, and fourteenth. They are as follows.

10. The court instructs the jury that if you find from the evidence that the defendant shot and killed William Johnson, but shall further find that at the time the defendant killed William Johnson that he believed and had reasonable cause to believe that William Johnson was about to kill him, or to do him some great bodily harm, you will acquit him. It is not necessary that the danger should have been actual and about to fall on the defendant, but it is necessary that the defendant should have believed that it was actual and about to fall on him at the time he fired the fatal shot, if he did so, and that he then had reasonable cause to believe it was actual and about to fall on him. It is no defense if he did in fact believe William Johnson was about to kill him or do him some great bodily harm, unless at the time he so fired the fatal shot, if he did so, he had reasonable cause to believe and did believe that William Johnson was at that time about to kill or do him some great bodily harm. As to whether or not the defendant had, at the time he fired the fatal shot, reasonable cause to believe, and did believe, that William Johnson was about to kill him or to do him some great bodily harm, you will decide from all the facts and circumstances before you.

11. The jury are the sole judges of the credibility of the witnesses, and of the weight and value to be given to their testimony. In determining as to the credit you will give to a witness and the weight and value you will attach to a witness' testimony, you

should take into consideration the conduct and appearance of the witness upon the stand, the interest of the witness, if any, in the result of the trial, the motives of the witness in testifying, the witness' relation to, or feeling for or against the defendant, or the alleged injured party, the probability or improbability of the witness' statements, the opportunity the witness had to observe and to be informed as to matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to matters within the knowledge of such witness. All these matters being taken into account, with all the other facts and circumstances given in evidence, it is your province to give to each witness such credit and the testimony of each witness such value and weight as you deem proper. If upon a consideration of all the evidence you conclude that any witness has sworn willfully false as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness' testimony.

14. The court instructs the jury that if you believe from the evidence that the defendant entered voluntarily into the difficulty that resulted in the death of William Johnson, and shall further find that the defendant could have, with safety to himself, withdrawn from the difficulty before the fatal shot was fired, and thus have avoided killing Johnson, it was his duty to have done so.

It is insisted that the tenth instruction is erroneous, in that it limits defendant's right to defend himself against the assaults which were made, or were about to be made upon him by deceased only, and leaves out of consideration his right to use a weapon if necessary to protect himself from impending harm at the hands of the mob of angry and excited men,

some of whom were armed with knives, pistols, bricks and stones, and acting in concert with deceased.

There was some evidence tending to show that at the time defendant shot deceased he was being pursued by him and a large number of angry and excited people, at least one of whom had an open knife in his hand, another a pistol, and others with parts of bricks, and if this was true, he had the same right to defend himself against the assaults of all of them or any one of them that he had against the assault of deceased, and if in so doing defendant shot and killed deceased he was not guilty of any offense, nor would he have been had he killed either of the others of the pursuing party; and as the instruction restricted the right of defendant to defend himself against the assault of Johnson only, it was too narrow and should not have been given as it was.

Although defendant brought on the difficulty in the first instance or voluntarily entered into it for some unlawful purpose, the evidence showed that he abandoned the conflict, and ran into a store, and if he did so in good faith, and when he came out of the store he was pursued by deceased and others acting in concert with him in such manner as to give defendant good cause to believe and he did believe that they were about to do him great bodily harm, he had the right to shoot and kill any of them if necessary to protect his person from such apprehended danger. *State v. Partlow*, 90 Mo. 608; *State v. Cable*, 117 Mo. 380; 1 Bishop's Criminal Law [5 Ed.], sec. 871; Horrigan and Thompson on Self-Defense, 227; *Stoffer v. State*, 15 Ohio St. 47.

Defendant's first refused instruction seems to have been intended to present this theory of the case, and while it does not do so very clearly and was properly refused for that reason, it was sufficient to call

the court's attention thereto, indeed equivalent to a request to instruct thereon; and in having failed to so do it committed error. *State v. Davis*, 141 Mo. 522; *State v. Brinkley et al.*, page 37 of this volume.

But if after defendant abandoned the conflict, he thereafter renewed it, or voluntarily entered into it for the purpose of wreaking his malice there was no self-defense in the case.

It is well settled that flight by a person accused of a crime for the purpose of avoiding arrest and prosecution for the offense raises a presumption of guilt (*State v. Potter*, 108 Mo. 424; *State v. MaFoo*, 110 Mo. 7; *State v. Williams*, 54 Mo. 170; *State v. Gee*, 85 Mo. 647), and there was sufficient evidence to justify the instruction upon that point.

The fourteenth instruction is vicious in that it does not embody that constituent element of voluntarily entering into a difficulty which is absolutely necessary in order to deprive a person so doing of the right to avail himself of the law of self-defense, that is, that he must have done so for the purpose of wreaking his malice, or for the purpose of taking the life of some of those present, or doing some of them some great bodily harm. *State v. Partlow, supra; State v. Gilmore*, 95 Mo. 554; *State v. Cable, supra; State v. Lewis*, 118 Mo. 84; *State v. Evans*, 128 Mo. 406; *State v. Hopper*, 142 Mo. 478; *State v. Rapp*, 142 Mo. 443.

In the last case, SHERWOOD, J., in speaking for the court said: "We say here now, once and for all, that the 'voluntary entering into a difficulty' is not an ingredient in any homicidal crime." It must be done for the purpose of wreaking malice, or for the purpose of taking advantage of an antagonist and of taking his life or doing him some great bodily harm. It logically follows from what has been said that the

second instruction asked by defendant, which is in harmony with the views herein expressed, should have been given.

There was nothing in the remarks of the prosecuting attorney in his argument before the jury which would justify a reversal of the judgment upon that ground.

For these considerations we reverse the judgment and remand the cause. GANTT, P. J., and SHERWOOD, J., concur.