Ex parte JOHN BURGESS, Petitioner.

In Banc, July 3, 1925.

1. **BAIL: Proof Evident or Presumption Great.**  Evidence of such a nature as to authorize its classification as proof evident or presumption great that the petitioner for a writ of *habeas corpus* is guilty of murder in the first degree as charged, requires a denial of the writ.

2. ———: **Identification of Petitioner.**  Where an automobile early at night of a spring day passed the house fronting a public road, on the porch of which a mother sat, with her six-year-old daughter in her arms, and the man on the rear seat fired four or five shots, killing the little girl, and the evidence strongly indicates that the petitioner was the driver of the car and that he and the man who did the shooting had entered into a malicious conspiracy to kill the child's father, there is sufficient identification of petitioner to authorize a denial of bail to him; and particularly so where he neither testifies nor offers any evidence to rebut that produced by the State, and he concedes that the evidence is sufficient to au-

thorize his being held for trial, for such a concession is a virtual admission that he was at the place of homicide.

3. **DELIBERATION.** Deliberation means that the homicidal act was done in a cool state of blood, and where there is an utter absence of any evidence of passion suddenly aroused or of provocation the act is to be considered as having been deliberately committed.

4. **BAIL: Deliberation: Discretion of Court.** Where the facts support a conclusion that the homicidal act was' deliberately committed, the admission of the accused to bail rests in judicial discretion soundly exercised upon proven facts within the prescribed limits of constitutional restrictions.

5. ————: **Constitutional Prescription: Meaning.** The provision of the Constitution (Sec. 24, art. 2) that "all persons shall be bailable by sufficient sureties, except for capital offenses, where the proof is evident and the presumption great" is founded upon justice and reason, and means that if the evidence is clear and strong, leading to a well-guarded and dispassionate conclusion that a capital offense has been committed, that the accused is the guilty agent and that he would probably be punished capitally if the law is administered, bail is not a matter of right and should be refused.

6. ————: **Murder Committed by Accomplice.** Where the evidence shows that the accused and another, moved by the same fell purpose, were acting in conjunction with each other, it is immaterial whether the accused or such other fired the fatal shot. In such case both are principals and both are equally guilty.

7. ————: **Shooting at One: Killing Another.** The enormity of the homicidal act is not mitigated, nor the grade of the crime lowered, by the fact that the petitioner and his associate in the crime, in attempting to kill the father, against whom their animus was directed, killed his child.

Corpus Juris-Cyc. References: Bail, 6 C. J., Section 168, p. 953, n. 21, p. 954, n. 22, 23; Section 170, p. 954, n. 29; Section 171, p. 955, n. 34, p. 956, n. 39; Section 173, p. 957, n. 48; Section 214, p. 985, n. 54 New; Section 215, p. 985, n. 57. Deliberately, 18 C. J., p. 473, n. 29, 33. Homicide, 29 C. J., Section 30, p. 1063, n. 58; Section 67, p. 1092, p. 21, 27.

## Habeas Corpus.

WRIT DENIED.

*Munger & Munger* and *J. W. Farris* for petitioner.

(1) When willful, premeditated homicide, committed with a deadly weapon used at a vital part, has been shown, the law automatically fixes the grade of the crime as murder in the second degree, which is always bailable in a reasonable amount. Sec. 24, Art. 2, Mo. Constitution; Ex parte Verden, 237 S. W. 734. Where there is no use of poison, no lying in wait and no commission, or attempt to commit, any of the enumerated felonies, the burden is on the State to show at the hearing at which bail is asked, by "evident" proof, that is, by clear, cogent and convincing evidence, entitled to admission at the final hearing, all of the elements of murder in the first degree, deliberation included. Ex parte Verden, 237 S. W. 734. (2) When the facts were shown at the preliminary all presumptions of guilt, if any existed, by reason of the filing of the affidavit, went out of this case for the purposes of this proceeding. Ex parte Verden, 237 S. W. 734. This leaves us then to determine if the proof was "evident" that Burgess did the killing, and that it was done with all the elements of murder in the first degree. Ex parte Fisele, 270 S. W. 103. "Evident" means plain or manifest, as to the mind or senses; clearly perceptible; obvious; indisputable. Funk & Wagnall's New Stand. Dict. (1913 Ed.). It means clear to the vision; especially, clear to the understanding, and satisfactory to the judgment. Webster's International Dictionary. For legal definitions, see, Ex parte Foster, 5 Tex. App. 646; Ex parte Boyett, 19 Tex. App. 14; McCoy v. State, 25 Tex. 38; Ex parte Acree, 63 Ala. 234; State v. Kaufman, 108 N. W. 246; Ex parte Verden, 237 S. W. 734.

*C. A. Powell,* Prosecuting Attorney, for the State.

(1) In a *habeas corpus* proceeding, this court considers only the evidence actually before it. Ex parte Fisele, 270 S. W. 103. (2) Conspiracy may be inferred from the circumstances surrounding the homicide. State v. Delbono, 268 S. W. 60. (3) Each conspirator is

equally guilty for each and every act comitted so long
as such act is the act agreed to be done, or is the natural
and probable consequence of the unlawful act agreed to
be done. State v. Vaughan, 200 Mo. 17; State v. Darling,
216 Mo. 459. (4) Deliberation and premeditation may
be inferred from the circumstances surrounding the
homicide. State v. Walker, 98 Mo. 104. (5) Act is
deliberate unless is done suddenly and without time to
reflect. State v. Bulling, 105 Mo. 221; State v. Liolios,
285 Mo. 22; Ex parte Fisele, 270 S. W. 103. (6) Prov-
ocation must amount to a just or lawful provocation to
reduce murder from first to second degree. State v.
Spaugh, 200 Mo. 606; State v. Bulling, 105 Mo. 221; Kel-
ley's Crim. Law & Proc. (3 Ed.) sec. 478. (7) Where
there is no just or lawful provocation, and the facts are
such as to raise a presumption of deliberation, a defend-
ant charged with murder in the first degree is not en-
titled to bail, for there is nothing to reduce the presump-
tion of deliberation. Ex parte Fisele, 270 S. W. 103. (8)
When there is an intent to kill one person and another
is killed, it is murder in the same degree as if the person
intended had been killed. State v. Sloan, 207 S. W. 782;
29 C. J. sec. 67, p. 1092. (9) Shooting into a man's dwell-
ing house is a felony. Sec. 3277, R. S. 1919. (10) If
while engaged in the commission of a deliberate unlawful
act or felony that endangers human life, a human life is
taken as a natural and probable result thereof, it is mur-
der in the first degree. State v. Vaughn, 200 Mo. 17;
State v. Bailey, 190 Mo. 288; State v. Walker, 98 Mo. 95;
State v. Bobbitt, 215 Mo. 32; State v. Darling, 216 Mo.
459; Kelley's Crim. Law & Proc. (3 Ed.) sec. 485.

WALKER, J.—This is an application by *habeas
corpus* for bail.

A complaint under the provisions of Section 3812,
Revised Statutes 1919, was filed before a justice of the
peace by the Prosecuting Attorney of Stoddard County,
charging the petitioner, John Burgess, with murder in
the first degree. The justice of the peace proceeded, up-

on the filing of this complaint, to examine the witnesses for the prosecution and the accused—the latter not testifying. It appeared to the magistrate that an offense had been committed as set forth in the complaint and that there was probable cause for charging the accused therewith, and the offense not being bailable an order was made committing him to the county jail, there to be held until discharged by due course of law.

An application for *habeas corpus* to admit the accused to bail was made to the Circuit Judge of Stoddard County, who, after a hearing, denied the writ and remanded the accused. Thereupon the latter filed a like application for bail in the Supreme Court, and a hearing was had upon a transcript of the testimony of the witnesses before the magistrate, the oral testimony of the accused under oath before this court, and after the arguments of counsel a determination of the case was had as indicated in this opinion.

The compelling facts concerning the tragedy in which the petitioner is charged with being a participant, may be briefly told.

William Miller, the father of the child killed, was sub-tenant on land belonging to the petitioner. The latter had let the tract of land to one Dink Lucas, who had sublet the same to Miller. A spirit of antagonism had arisen between Miller and Lucas, growing, according to Miller's testimony, out of controversies about work, but due, as shown by other evidence, to the alleged destruction of some illicit stills by Miller for the manufacture of liquor on land owned by the petitioner. This resulted in a severance of the business relations existing between Miller and Lucas, which terminated Miller's tenancy, and he was, at the time of the murder of his child, preparing to remove from the land. There is scant oral testimony, but strong circumstances, indicative of the fact that the petitioner was in active sympathy with Lucas in this controversy.

On the night of April 20, 1925, while Miller was away at a neighbor's making arrangements for removal

309 Mo. Sup.—26.

from the land, the tragedy occurred. Soon after dark that night Mrs. Miller, his wife, with her half-grown daughter Marie, and her little six-year-old daughter, Pauline, were sitting on the porch of their home, fronting the public road. There was at that hour sufficient light to discern objects on the road. Mrs. Miller's graphic recital best portrays what subsequently occurred. In effect she says: ''I saw an automobile coming south along the public road that ran in front of the house, within sixty feet of where I was sitting. I had Pauline in my arms; as the car passed four or five shots were fired from the rear seat. The car picked up speed after it passed the house as it went south. I arose to take my little girl into the house, and when I attempted to place her upon her feet she fell from my arms upon the floor. Marie picked her up and found that one of the bullets fired from the car had struck her in the head and had killed her. I could not see who or how many persons were in the car, but I saw the blaze from the gun issuing from the rear seat.''

That night as Miller was returning from the neighbor's and was several hundred yards south of his home, the view being unobstructed, he saw a car passing his house, and heard four reports of gunshots accompanied by four flashes of light. Before the car reached him he sprang behind some bushes on the roadside, and as the car passed him he recognized John Burgess—the petitioner—and Dink Lucas, as the sole occupants of the car. Burgess was at the wheel and Lucas was sitting on the back seat. As Miller went homewards he met a neighbor, Jim Harris and his wife, who told him that his little daughter, Pauline, had been shot and killed. Harris and his wife were at the time of the shooting driving along the road about three hundred yards in the rear of the car as it passed Miller's house and they saw the flashes of light and heard the shots. They stopped a few minutes at Miller's, learned of the killing of the child, and then drove southward along the road the car had gone, notifying the neighbors as they went and endeavoring

to overtake the car. The tracks of a car having tires of the description of those found on Lucas's car were traced along the road passing Miller's house around a section road which terminated at Lucas's house. Horton, Hargett and others saw a car without lights, soon after the shooting, pass their houses going south at a high rate of speed. It had two occupants, one at the wheel and another on the rear seat. About two hours before the shooting, Burgess, the petitioner, in a conversation with John Horton, said that "Miller had destroyed some mash barrels of his and if he [Miller] had been found there at the time, they would have burnt him on them; that Lucas had a pistol loaded all around and that it would fire every time." Thus much for the facts.

I. Counsel for the petitioner. have greatly facilitated the disposition of this case by conceding that the evidence is sufficient to authorize his being held for trial, but contend that he is nevertheless entitled to bail. This concession results in the passing approval of matters which otherwise might have demanded discussion and determination.

*Sufficiency of Evidence.*

Our judicial horizon, therefore, is limited to the consideration of the sufficiency of the evidence. More definitely declared is the evidence adduced at the hearing before us, of such a nature as to authorize its classification as proof evident or presumption great that the petitioner is guilty as charged of a capital offense. This was the test declared in Ex parte Verden, 291 Mo. 552. The writer did not agree to the conclusion reached in that case as to the construction placed upon the rulings of this court in Ex parte Claunch, 71 Mo. 233; and State ex rel. Mollineaux v. Madison County Court, 136 Mo. 323, but the court ruled otherwise, and an opinion to the contrary, as pious old George Herbert said, is "water over the dam." By the standard established in the Verden case, therefore, will the merits of the petitioner's application be measured.

While the identification of the petitioner as one of the occupants of the car from which the shots were fired

is not expressly admitted, in the presentation of this case, the concession that he should be held for trial is virtually an admission of his presence at the place of the homicide. The facts and circumstances lend no color of propriety to his presence there; on the contrary, they manifest in their every phase the actions of a malevolent mind, fatally bent on mischief and a heart devoid of those kindly impulses which characterize our common humanity. Much as this analysis may seem to partake of the nature of invective it does no more than to embody the conclusion of a reasonable mind based upon a concrete statement of what occurred, and is necessary to determine the matter at issue. The moving cause of the petitioner's hatred towards Miller, as disclosed by the former's conversation with Horton, was the alleged destruction by Miller of the illicit stills. Two hours after this unguarded explosion of the petitioner's wrath towards Miller, when night time came, and darkness, which has from Time's beginning served as a cover for infamy, he sought out his tenant and confederate, Lucas, who had the pistol "which never missed fire" and in the latter's car they sped by Miller's house, and while the petitioner steered the car Lucas fired the shots, one of which killed the little child. Can it be seriously said in the face of these facts that this crime lacks that deliberation necessary to its classification as murder in the first degree. What is meant by deliberation? The books are replete with definitions of this technical term, which, with others, are necessary to a common law charge of murder in the first degree. It simply means "done in a cool state of the blood" or, as supplemental to this definition, "not in a sudden passion, engendered by lawful or some just cause of provocation." In this manner was the word defined in State v. Bobbst, 269 Mo. 1. c. 225, and cases there cited. Ample time had elapsed, between the expression of the petitioner's hatred towards Miller and the firing of the shot which killed the child, to enable the blood to cool and reason to assert its sway, if it had a resting place in the

*Identification.*

*Deliberation.*

mind of the petitioner. There was, in short, an utter absence of any evidence of passion suddenly aroused or of provocation.

II.   Present, therefore, the required facts to support the conclusion that this crime was deliberately committed and should, as a consequence, be classified as a capital offense (Ex parte Heath, 227 Mo. 1.

**Judicial Discretion.** c. 399), is the proof evident and the presumption great within the meaning of the Constitution (Sec. 24, art. 2) limiting the right to bail. The wisdom of the law in making these limitations, if it were not manifest from the nature of the crimes excepted, has been carefully considered and clearly explained by one of the great commentators on the common law. Blackstone, in that silken style which characterizes his writing, says in this regard: ''To allow bail to be taken commonly for such enormous crimes would greatly tend to elude the public justice; and yet there are cases, though they rarely happen, in which it would be hard and unjust to confine a man to prison, though accused of even the greatest offenses.''  [4 Com. 299.]  While at the common law, before and since Blackstone's time, all offenses, however high, including murder, were bailable before indictment or information, this did not exist as a matter of right, but rested in judicial discretion. Chitty, in a lucid discussion of this subject, says, in effect: While the Court of King's Bench may bail any man according to its discretion, on the return of *habeas corpus*, the rules observed by the court in the exercise of this right are based upon a series of judicial decisions, and the discretion authorized to be exercised by the court is not a wild, but a sound discretion and should be confined within the limits to which an honest man, competent to discharge the duties of his office, ought to confine himself. [1 Ch. Cr. Law, 129.]

III.   It may not concern us here, except in an academic way, to discuss the former and present the rule and

practice in the English courts in regard to bail, because

**Constitutional Provision.**
in most, if not all, of our states of the Union the rule of the common law, as recently pointed out in a well-considered Oklahoma case, In re Thomas, 20 Okla. 167, 93 Pac. 980, has been modified in all except capital offenses by constitutional enactments providing, as in the pithy words of our own Constitution, that such offenses shall not be bailable where the proof is evident or the presumption great. This provision has been a part of the Bill of Rights as declared in each organic law of this State from the adoption of the Constitution of 1820. Its first judicial recognition appears in Shores v. State, 6 Mo. 640. It may be said generally, therefore, that one accused of crime is entitled to bail as an absolute right, subject to the limitation that it should be denied in capital cases where the proof is evident or the presumption great. This limitation, founded upon justice and reason, has nothing mystic in its meaning. What is meant by the presence of proof evident or its alternative, presumption great, is simply that if the evidence is clear and strong, leaving a well-guarded and dispassionate judgment to the conclusion that the offense has been committed as charged and that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered, bail is not a matter of right and should be refused. [Ex parte McAnally, 53 Ala. 495, 25 Am. Rep. 646.]

It is true that there have been various rulings in the courts of last resort of this country as to the conditions under which the words of limitation upon the right to bail should be applied. We are content, however, with the rule announced in Ex parte McAnally, supra, which is supported by an array of well-settled cases as appears in the case of In re Thomas, supra.

The petitioner's presence at the time and place of the homicide was shown; an utter lack of provocation is apparent; the manner in which the crime was committed manifests premeditation and that malice aforethought which characterize murder; deliberation, that prime es-

sential of a capital offense, was not absent. Proof of these essentials brings the petitioner's case well within the inhibitory limitations of the Constitution upon our right to grant bail.

IV.   It is immaterial, so far as the criminal liability of the petitioner is concerned, whether he or his associate in crime fired the fatal shot.   Moved by the same fell purpose and acting in conjunction with each other, they are, under our law, each principal offenders and equally guilty; nor does it mitigate the enormity of the offense or lower the grade of the crime as classified in our laws that, in attempting to kill the 'father, against whom their animus must have been directed, they killed his child.   These conclusions have often met with the approval of 'this court and require no discussion here as to their correctness.   The merits of this case have been discussed only so far as it was deemed necessary to demonstrate that the proof offered entitles the crime charged to no other classification than that of murder in the first degree.   This conclusion is emphasized by the absence of any extenuating circumstances or pleas of palliation on the part of the petitioner.   True it is, that one accused of crime need not speak, unless he so wills, but silence ceases to be golden when such an one seeking relief from legal custody not only seals his own lips but offers no convincing proof to rebut the State's evidence that the proof of his crime is evident 'or the presumption of his guilt great.

The writ is therefore denied and the petitioner is remanded to the custody of the sheriff to be held by him until discharged by due course of law.   All concur; *Atwood, J.,* in the result.