**STATE of Missouri, Respondent,**

v.

**Herbert RICHARDSON, Appellant.**

**No. 46757.**

Supreme Court of Missouri,
Division No. 2.

March 9, 1959.

Cecil Block, St. Louis, for appellant.

John M. Dalton, Atty. Gen., W. Don Kennedy, Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

This is an appeal by Herbert Richardson from a judgment imposing a sentence of life imprisonment in accordance with the verdict of a jury on a charge, under the Habitual Criminal Act (§ 556.280) of the murder in the second degree (§§ 559.020, 559.030) of Clay Greer Phelps. (Statutory references are to R.S.Mo.1949 and V.A. M.S.) No brief has been filed on behalf of defendant. We are convinced defendant's lengthy motion for new trial contains many assertions counsel would not have carried forward in a brief. The main complaints are against the admission of certain evidence and the instructions. The court instructed on murder in the second degree, manslaughter, the habitual criminal law, self-defense, accident, burden of proof, credibility of witnesses, et cetera.

The homicide occurred about 9:00 p. m., August 12, 1957, just after the start of a "Rock and Roll" show in the Kiel Auditorium, in the City of St. Louis, Missouri. The parties are Negroes, and the persons in one group were strangers to those in the other groups.

Mr. and Mrs. Phelps, his sister, Mrs. Smith, and her two daughters, Mrs. Rachel Henderson and Mrs. Ethel Ware, and Mr. Ollie Wickerson were seated in the top row of a section of the lower balcony at Entry 14 of the auditorium. Mr. Wickerson occupied seat 1, the aisle seat, Mrs. Henderson was to his left, Mr. Phelps to her left, and others in the Phelps party occupied seats 4, 5 and 6 in said row.

Defendant took Flora Harris to the show. Flora carried a large leather purse. Defendant had a .45 caliber automatic pistol with a full magazine of ten bullets.

Flora testified defendant had the gun in his side coat pocket. Defendant stated it was in the glove compartment of his automobile and he thought someone might break into his car and steal the gun while they attended the show. He asked Flora to put the gun in her purse. She at first refused but, upon his threatening to strike her, allowed the gun to be placed in her purse.

Defendant and Flora Harris entered the auditorium. Flora proceeded to the ladies' room while defendant waited at the entrance. The State's testimony was that two or three boys were singing and dancing on the ramp at Entry 14. Flora placed the number at five or six and defendant at eight or ten. He testified that they were intoxicated; that Arthur Green (known in the record as Bopeep and Bo) was the main one, Freddie Sutton was another; that the boys addressed vulgar remarks to Flora upon her return, and that they ignored the remarks. The usher seated them in the row below and across the aisle from the Phelps party, defendant occupying the aisle seat, with Flora to his right.

Defendant was noticed to glance back over his shoulder several times after being seated. In about three to five minutes defendant had a struggle with Flora for the purse. Flora was trying to keep the purse. Defendant got the purse, took the gun and put it behind him. Freddie Sutton came down the aisle dancing, put his hand on a seat and turned around as though someone had called, and defendant (he is left-handed) struck Sutton with his left hand and knocked him back and down. Sutton called out "Bo." Green (Bo) came down the steps to within a foot or two of defendant. Defendant hit him with his left hand. At that time defendant had the gun in his right hand behind him. Green then struck or pushed defendant back into the seats. Defendant came up with the gun. He was facing the Phelps party. Green jumped aside and "hit the floor." Defendant fired one shot and then three in rapid succession. Defendant stated the gun jammed.

One bullet struck Mr. Wickerson's right leg; another struck Mrs. Henderson's left foot; another struck Mr. Phelps, and one went through the back of a seat in front of them. Mr. Phelps said: "I am hit" and slumped to the floor. He was 42 years old. He had been wounded in the left upper quadrant of the abdomen and was dead upon arrival at the hospital.

Defendant stated to the officers he pulled the trigger intending to shoot Green, who was within a foot or two of him. The State's evidence was that Sutton, Green and defendant were the only persons involved in the affray; that neither boy made any threat against defendant; that neither had a weapon in his hand, and that defendant struck the first blow against Sutton and also against Green.

The evidence favorable to defendant is confusing but might be said to establish the following: Defendant was 27 years old. Sutton was intoxicated. He came down the aisle, stopped, leaned on the rail, and started cursing defendant and Flora. Defendant asked him to step aside that he might see the show. Sutton threatened defendant, grabbed defendant, and struck him. Defendant then struck Sutton, knocking him down. Sutton called for Green. Defendant testified Green had a reputation of being a hoodlum and gangster. Sutton got up, defendant struck him again and Sutton fell. Defendant turned to Green, hit him with the back of his hand and saw several young boys climbing over the ramp trying to get to him. Green struck defendant on the jaw, knocking defendant against the seat, and the pistol fired. Green kept striking defendant with his fist, trying to get the gun. Defendant testified he had his finger on the trigger and that the gun, an automatic, kept on firing. Defendant struck Green with the pistol and Green released him. Defendant then left the auditorium by himself through Entry 14, passing out the 14th Street entrance, where, we understand, the boys were, with the gun in his belt. Defendant testified at the trial

he did not intentionally pull the trigger of the gun at any time.

■ The charge against defendant under the Habitual Criminal Act (§ 556.280) was that he had been convicted, imprisoned and duly discharged eight times for the crime of larceny from the person under § 560.195. Section 560.195 was repealed by Laws 1955, p. 507, and defendant claims error was committed by references to said prior offenses in the opening statement of the State's attorney and the instructions on punishment under the Habitual Criminal Act. Defendant's position is that said offenses were no longer crimes when the instant offense was committed on August 12, 1957, and were unavailable to the State under the Habitual Criminal Act. The punishment for violating § 560.195 ranged from a penitentiary sentence to a fine and was a felony (§ 556.020). The contention was ruled against this defendant in State v. Richardson, Mo., 315 S.W.2d 139, 141.

■ Defendant drove across Eads Bridge after the shooting and threw his pistol into the Mississippi River. Frank B. Ruff of the St. Louis Metropolitan Police Force and an expert on the identification of firearms and ballistics identified a gun marked State's Exhibit 27 as a Colt .45 semi-automatic pistol. This gun was not offered in evidence. It was explained to the jury that it was not the gun used by defendant but was the type of gun he used. Witness Ruff explained how the gun operated; stated that it would not continue firing; that the trigger had to be pulled for each shot; that it was a difficult weapon to fire with accuracy by one not experienced in its use, and the type of weapon that fired .45 caliber copper-jacketed bullets found at the scene soon after the shooting and the bullet taken from decedent's body. Defendant contends the court should have sustained his request for a mistrial when, following the direct and cross-examination of witness Ruff with respect to State's Exhibit 27, his counsel first objected to the identification and use of State's Exhibit 27 on the ground it was not the gun used by defendant. We think the point not well taken for several reasons: Defendant's objection was not timely. State v. Cowan, Mo., 310 S.W.2d 939[3, 4]; State v. Burns, Mo., 280 S.W.2d 119, 121, 122; State v. Gaines, Mo., 261 S.W.2d 119[3]. Further, we are of opinion the testimony and the use made of State's Exhibit 27 were competent under the record before us. It tended to meet defendant's testimony that he accidentally fired the shots. State v. Harlan, Mo., 240 S.W. 197, 201[2, 3]; 20 Am.Jur. 632, § 760; Underhill, Criminal Evidence, (5th Ed.), § 517. Additional allegations of error in defendant's motion for new trial were not presented to the trial court at the time of defendant's objection to State's Exhibit 27, and are not preserved for appellate review. State v. Harlan, supra [4]; State v. Lindsey, Mo., 80 S.W.2d 123, 125[6]; State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523, 526[9, 10]; State v. Hinojosa, Mo., 242 S.W.2d 1, 8[11].

■ Defendant's assignments do not point out in what specific respects the instruction on second degree murder failed "to properly define the crime of murder in the second degree" or how it "shifted the burden of proof from the State and required the defendant to establish his innocence"; and preserve nothing for appellate review. Sup.Ct.R. 27.20, 42 V.A. M.S.; § 547.030; State v. Bledsoe, Mo., 254 S.W.2d 618, 621[1]; State v. Jordan, Mo., 235 S.W.2d 379, 383[7]. The court defined murder in the second degree, willfully, premeditatedly, malice, and malice aforethought, instructed on the facts, and required the State to prove its case beyond a reasonable doubt. This may account for the indefiniteness of defendant's assertions. The instruction has met with approval in the respects defendant mentions. Consult State v. Myers, 221 Mo. 598, 613(II), 121 S.W. 131, 135(2); State v. Hyland, 144 Mo. 302, 311(III), 46 S.W. 195, 198(3); State v. Baker, Mo., 277 S.W.2d 627, 630 [10].

■ Defendant's assertions that the instruction on manslaughter failed to properly define "manslaughter" and the definitions of "excusable homicide" and "justifiable homicide" commented on the evidence fail to point out in what specific respect the errors exist and preserve nothing for appellate review. See Sup.Ct.R. 27.20 and authorities cited supra. Reading the instruction as a whole and in the light of the other instructions discloses that it conformed to instructions heretofore approved by this court. State v. Bradford, 324 Mo. 695, 24 S.W.2d 993, 996[3]; State v. Gadwood, 342 Mo. 466, 116 S.W.2d 42, 58(VIII); State v. Malone, 333 Mo. 594, 62 S.W.2d 909, 911[5].

■ There is no merit in defendant's assignments that the State failed to make a submissible case of murder in the second degree and that it was error to instruct on murder in the second degree. The stated reason that defendant did not know, had no quarrel with and did not shoot at deceased does not constitute a defense. The constitutive elements essential to convict an accused of murder follow his bullet and are transferred to his actual victim when they exist with respect to his intended victim. State v. Batson, 339 Mo. 298, 96 S.W.2d 384[6, 7]; 40 C.J.S. Homicide § 18, p. 864; 26 Am.Jur. 179, § 35. The State's evidence disclosed that defendant kept the pistol with which he shot concealed and ready for use. This was sufficient to raise an inference of malice. A finding of an intentional, willful, premeditated killing with a deadly weapon, with malice aforethought, was warranted. § 559.020; State v. Bowles, 146 Mo. 6, 14, 47 S.W. 892, 893, 69 Am.St.Rep. 598; State v. Maupin, 196 Mo. 164, 93 S.W. 379, 382(2); State v. Painter, 329 Mo. 314, 44 S.W.2d 79, 82(III).

All the instructions are to be read together; and what we have said in the preceding paragraph disposes of defendant's complaint against an instruction (No. 9) informing the jury that the intent and circumstances under which a shooting occurs are carried over from the person aimed at and missed to a third person who is actually shot.

■ Defendant makes several complaints against the instruction (No. 7) on self-defense. Defendant does not point out how or wherein the instruction constituted a comment on the evidence or was a mistaken conception of the law or tended to shift the burden of proof and required defendant to establish his innocence. These complaints preserve nothing for appellate review. Sup.Ct.R. 27.20; State v. Bledsoe, supra; State v. Jordan, supra. With regard to the last mentioned complaint, the instruction did not affirmatively place any burden of proof on defendant. The court instructed on the presumption of defendant's innocence and required the State to establish defendant's guilt to the satisfaction of the jury and beyond a reasonable doubt. It was not necessary for the instruction on self-defense to repeat the burden of proof instruction. State v. Dill, Mo., 282 S.W.2d 456, 460[4, 5]; State v. Tellis, Mo., 310 S.W.2d 862, 864[3, 4].

■ Defendant contends the portion of instruction No. 7, informing the jury "that the right to defend oneself from danger is a right to which a person may have recourse under certain circumstances and conditions, in order to prevent an apprehended injury to himself by another or others" is incorrect because a person always has a right to defend himself from danger. Defendant's statement of the law is too broad, is not correct, and his contention is overruled. See § 559.040; State v. Tellis, Mo., 310 S.W.2d 862, 865; State v. Maupin, 196 Mo. 164, 175, 93 S.W. 379, 383 (instruction No. 7); State v. Havens, Mo., 177 S.W.2d 625, 629[9, 10]; 40 C.J.S. Homicide §§ 117 et seq., p. 987; 26 Am. Jur. 241, § 125 et seq.

■ Two sentences of the instruction read: "Although defendant may have really believed himself to be in danger, yet

he cannot be acquitted on the ground of self-defense unless it further appears from the evidence that he had reasonable cause for such belief. On the other hand, even if no real danger existed, yet if defendant had reasonable cause to believe and did believe that it existed, he would be justified in acting upon such belief." Defendant asserts the sentences commented on the evidence, are inconsistent, negatived his right of self-defense, and conflicted with instructions under the Habitual Criminal Act without pointing out wherein or how said charges are true. The assignment is insufficient for the purposes of appellate review. The instruction is to be read as a whole and with the other instructions in the case, and when so read defendant's assertions are without foundation. See State v. Singleton, Mo., 77 S.W.2d 80, 83 [3, 4]; State v. King, 203 Mo. 560, 567 (3), 102 S.W. 515, 517(3); State v. Robinson, 353 Mo. 934, 185 S.W.2d 636, 641 [10]; State v. Havens, Mo., 177 S.W.2d 625, 629[9]; 40 C.J.S. Homicide §§ 114, 115, 123–126, p. 983 et seq.; 26 Am.Jur. 241, §§ 125, 126, 137; Warren, Homicide, 1938, § 155.

■ Said instruction first informed the jury defendant had the right "to prevent an apprehended injury to himself by another or others." Thereafter sufficiently stated for the purpose of defendant's assignment, the instruction was to the effect that defendant should be acquitted if, when he shot deceased, defendant "had reasonable cause to believe, and did believe that one Arthur Green or one Freddie Sutton or another person was about to take his life, or to do him (the defendant) some great personal injury"; and if defendant shot deceased unnecessarily, "when he did not have reasonable cause to believe that Arthur Green or Freddie Sutton or another was then about to kill him or do him some great bodily harm or personal injury, then there is no self-defense in the case and you cannot acquit the defendant on that ground." Defendant says the foregoing limited his right of self-defense. This is based on defendant's testimony that he saw "several young boys climbing over the ramp trying to get to me" after the first shot. The instant situation is not that presented in State v. Adler, 146 Mo. 18, 25, 47 S.W. 794, 795, 796; State v. Lowe, Mo., 260 S.W.2d 729, 731, and cases cited, where the instruction limited defendant's right of self-defense to defending himself against decedent when there was evidence of concerted action by others against defendant. We think any jury would understand from the instruction that if defendant had lawful reason for and was defending himself against the several young boys he mentioned the jury would have to acquit defendant as he would certainly be defending himself against one of them. The instruction was more favorable to defendant than his testimony as under his testimony he would be defending himself against the several young boys "trying to get to me," whereas under the instruction as given if he were defending himself against Green, or Sutton, or any one of the young boys he was to be acquitted. We find no prejudicial error.

Defendant complains that, although the court instructed on the turbulent disposition of Green, it ignored the reputation of Sutton and other members of his group. There was no testimony establishing the reputation of anyone except Green, and this is sufficient for overruling defendant's contention. State v. Turner, Mo., 272 S.W.2d 266, 271[14, 15].

■ Defendant says the instruction (No. 8) on excusable homicide, accident, limits the defendant's right in that even if the shooting were accidental, they should not acquit defendant unless they found the gun was accidentally discharged. It is our understanding that the accident that will acquit a defendant is the accidental firing of the gun and not the accidental course the bullet takes. § 559.050; State v. Batson, 339 Mo. 298, 96 S.W.2d 384, 389[6, 7]; Ex parte Burgess, 309 Mo. 397, 274 S.W. 423, 426[4]; State v. Payton, 90 Mo. 220, 226(3), 2 S.W. 394, 396(3).

Our examination of the portions of the record required by Sup.Ct.R. 28.02 discloses no reversible error.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

STORCKMAN, P. J., EAGER, J., and JAMES W. BROADDUS, Special Judge, concur.