**STATE of Missouri, Plaintiff-Respondent,**

v.

**Robert BEA, Defendant-Appellant.**

No. 35152.

Missouri Court of Appeals,
St. Louis District,

Division Two.

April 16, 1974.

Motion for Rehearing or to Transfer to Supreme Court is Denied May 14, 1974.

Shaw & Howlett, Charles M. Shaw, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Ellen S. Roper, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Judge.

This is an appeal by the defendant Robert Bea from a judgment of conviction entered by the Circuit Court of St. Louis County, Missouri, on a jury verdict. Defendant was convicted of manslaughter, pursuant to § 559.070, RSMo 1969, V.A.M.S., and sentenced to two years in the custody of the Department of Corrections, § 559.140.

On this appeal defendant claims that the court committed error for the following reasons: (1) permitting the prosecution to circumvent a previous ruling of the court by allowing the prosecutor to cross-examine defendant relative to certain incriminatory statements which the court has previously suppressed; (2) giving of Instruction No. 6 for the reason that said Instruction contains improper legal definition of the willfully, feloniously, premeditatedly, malice and malice aforethought and that said Instruction contains an improper statement of the law and shifts the burden of proof from the state to the defendant; (3) giving of Instruction No. 7 for the reason that said Instruction was an improper statement of the law of manslaughter and was confusing to the jury, particularly that section of the Instruction dealing with justifiable homicide; and (4) improperly deleting the words "striking, knocking, hitting and beating" from both the oral instruction and the written instruction. We affirm.

Our review will be confined to the allegation of error contained in ground number one. Ground number 2 is so lack-

ing in particularity and detail that it preserves nothing for appellate review. State v. Richardson, 321 S.W.2d 423, 427 (Mo. 1959); Rule 27.20(a), V.A.M.R. Nor, are we inclined to consider this allegation under our plain error rule because defendant was not convicted of murder in the second degree, the offense submitted in Instruction No. 6, and thus there has been no manifest injustice or miscarriage of justice in the submission of this instruction. State v. Auger, 434 S.W.2d 1, 4 (Mo.1968); Rule 27.20(c), V.A.M.R.

Ground number 3 also fails to comply with Rule 27.20(a) and consequently saves nothing for review. State v. Murray, 280 S.W.2d 809, 813 (Mo.1955). We are informed neither as to how or why the instruction is an improper statement of the law defining manslaughter, nor in what manner the instruction confused the jury.

Ground number 4 likewise fails to state briefly and concisely what action of the court is sought to be reviewed and wherein or why the action of the court was erroneous. Rule 84.04(d), V.A.M.R. Accordingly, nothing is preserved for our review.

Since defendant does not question the sufficiency of the evidence, we will set out only those facts which will make for an intelligent understanding of the controversy.

On September 12, 1971, defendant and his stepson, Carl Jones, after having been informed of a fight between his son, Kevin, and Mr. Hildred Dillard's son, Stephen Bost, went to the Dillard residence to see what the fight was all about. As the defendant and Mr. Dillard were discussing the matter on the front porch, Steve and Carl exchanged words and began to fight. According to the state's evidence the fight began at defendant's suggestion. When Mr. Dillard attempted to break up the fight, defendant advanced upon him with a hammer and said, "Nigger, I'll kill you." Immediately defendant struck and broke Mr. Dillard's finger. Mr. Dillard jumped off the porch with defendant in pursuit.

Defendant then ran back up the stairs and struck Mrs. Dillard on the head, inflicting a mortal wound from which she died on September 17, 1971.

After Steve and Carl began to fight, according to defendant, Mr. Dillard threatened him with a knife and chased him to his car. There he obtained the hammer and attempted to defend himself. His explanation for the hammer was that he was a part-time craftsman, and the hammer and other tools were in his tool box in the back of his station wagon. Also, at the time he received the information that his son, Kevin, was hurt, he had just returned from a job. His reason for attacking Mrs. Dillard was that she brandished a pistol; putting him in fear of his own life and his son's life.

Shortly thereafter defendant flagged down one Officer Merlin Guyot of the Pagedale Police Department. He told Officer Guyot, "I just hit a bitch in the head with a hammer down here. I think she's dead.'" Seeing the claw hammer on the front seat, Officer Guyot seized it for evidence.

On direct examination defendant testified that—he would not carry a hammer for protection; he did not take a hammer to protect himself or to use it as a weapon when he went to the Dillard home. On cross-examination he denied that he carride the hammer in his belt when he went upon the Dillard's front porch the first time; or that he ever told anyone in the presence of either Officer Guyot or Moses King that he had a hammer at the time he first confronted Mr. Dillard on the porch. Likewise, defendant denied that he urged Carl and Steve to fight, or that he took the hammer along to keep anyone from interfering while the boys fought.

On rebuttal the state recalled Officer Moses King who testified that during an argument between Steve and defendant at the police station he heard defendant say that he brought Carl Jones over to whip Steve and had the hammer along to keep anyone from interfering with the fight in case trouble should start.

The statement testified to in rebuttal by Officer King during a voir dire hearing

had been suppressed by the court because defendant had not been provided with any notice or information concerning any statement by him while in police custody. The evidence showed that the prosecutor had a record of the purported statement in the form of a grand jury transcript. State v. Scott, 479 S.W.2d 438 (Mo.1972). The court held the state to be in violation of Rule 25.195, V.A.M.R., for its failure to permit discovery on defendant's motion to inspect.

Defendant argues that because the statement was initially suppressed it was error either to cross-examine him or to permit rebuttal testimony pertaining thereto. In support of his contention defendant cites State v. White, 440 S.W.2d 457 (Mo.1969); State v. Williams, Mo., 376 S.W.2d 133 and State v. Moser, 423 S.W.2d 804 (Mo. 1968). In the *White* case, supra, the issue was the propriety of a prosecutor to argue either matters not in evidence or testimony that the court had excluded. The *Williams* case, supra, held that in oral argument commenting on or referring to evidence which the court had held inadmissible is improper, even though exclusion of the evidence is erroneous. The *Moser* case dealt with the proposition that even if cross-examination of a defendant is not strictly within the scope of direct examination, it will not be grounds for a reversal unless it is material or prejudicial to defendant's substantial right. None of these cases is apposite. Here, the question for decision is, whether or not a defendant who has taken the stand and testified in his case in chief can be impeached by a prior inconsistent stateemnt which had been suppressed?

In State v. Huffer, 424 S.W.2d 776, 778 (Mo.App.1968), the court declared that a defendant who testifies on his own behalf is subject to cross-examination on his direct testimony, and that he could be impeached and contradicted as any other witness. § 546.260 RSMo 1969, V.A.M.S. No objection was made at trial or on this appeal to the state's first cross-examination wherein defendant was questioned as to any prior inconsistent statements made by him in the presence of Officer Guyot or King. Obviously, then the court cannot be convicted of error for the examination that purported to lay the foundation for the subsequent rebuttal testimony. State v. Stevens, 467 S.W.2d 10, 18 (Mo.1971), cert. denied, 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971).

■ Thus we reach the threshold question, may a defendant be impeached by a prior inconsistent statement which the court had suppressed because the state had failed to permit discovery in obedience to the court's order to permit an inspection. We deal here with neither a statement that was suppressed because it was the product of an in-custody interrogation where the interrogator failed to give the Miranda warning. Nor do we deal with a statement which claims to be coerced or involuntary. See Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), where the prosecutor was permitted to impeach the defendant's credibility by the use of a confession that had been suppressed in the state's case in chief for failure to observe the procedural safeguards of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although the *Harris* case, supra, is not altogether analogous, the same principle is applicable; i. e., any material prior inconsistent statements may be shown to impeach a defendant's credibility, and the shroud of protection given defendant by sustaining his motion to suppress because of a breach of duty on the part of the state should not be perverted into a license for a defendant to use perjury by way of a defense, free from the risk of confrontation with prior material inconsistent utterances. Here, defendant testified that he did not carry a hammer for protection; and did not carry it with him as a weapon at the time he visited the Dillard home. Furthermore, he testified that he ran to his car to obtain the hammer to protect himself from a knife assault by Mr. Dillard, and that after Mr. Dillard fled, he

was confronted by the victim who put into fear for his own life because she brandished a pistol. All of this testimony not only was material, but necessary to establish defendant's right of self-defense. The court was placed in a dilemma. Was it to permit the positive assertions of defendant to go unchallenged by the state, and thereby pervert justice? We think not. We hold that it was proper for the state under the circumstances of this case to use defendant's previously suppressed statements to attack his credibility in order that the jury could not only properly evaluate his testimony, but also aid them to reach a just verdict. To hold otherwise is to permit defendant to assume a virtue which according to the evidence he possesses not.

We have examined the whole record and find no manifest injustice or miscarriage of justice, pursuant to our plain error rule, 27.20(c), V.A.M.R., therefore the judgment is affirmed.

CLEMENS, Acting P. J., and GUNN, J., concur.